**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42022**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 39 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 7, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TRISTUM BEEKS, II, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for felony violation of a no-contact order, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Chief Judge

Tristum Beeks, II, appeals from his judgment of conviction for felony violation of a no-contact order. He contends that the state committed prosecutorial misconduct during voir dire, direct examination, and closing argument. He also contends that the district court erred in its instructions to the jury. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

A no-contact order was entered against Beeks after he was charged with domestic battery of his fiancée. Beeks violated the no-contact order a few days after the incident and again several months later, resulting in misdemeanor convictions for each violation. A few months later and while he was still incarcerated, Beeks participated in a videophone conversation with

the victim for over twenty-seven minutes, all of which was recorded. The victim logged in with a false name and Beeks had another inmate, going by the pseudonym "Justin Timberlake," answer the call. While sitting at a table behind the other inmate, Beeks had the inmate ask the victim if it was okay to talk with her. She responded by asking him why it would not be okay. Beeks then approached the terminal and spoke with the victim directly for the remainder of the call. After approximately fifteen minutes, Beeks asked the victim if she had gotten the no-contact order removed, to which she responded that she had not. Beeks continued to speak with the victim for approximately twelve more minutes. As a result, Beeks was charged with violation of a no-contact order, enhanced to a felony for being a third offense within five years. I.C. § 18-920(3).

At trial, a redacted version of the recorded conversation was admitted into evidence, along with copies of the amended and extended no-contact order in effect at the time, which noted that Beeks had previously been charged with domestic assault or battery. An officer also testified that he had served Beeks with the no-contact order before the recorded conversation took place. At the close of evidence, Beeks requested that the district court give Idaho Criminal Jury Instruction (ICJI) 1508, which addresses crimes committed as a result of accident or misfortune.[1] The state objected and, after hearing argument, the district court rejected the requested instruction, concluding that it was not supported or required by the evidence produced at trial. The jury subsequently found Beeks guilty of felony violation of a no-contact order. The district court sentenced Beeks to a unified term of three years, with a minimum period of confinement of eighteen months, and retained jurisdiction. Beeks appeals.

## II.

## ANALYSIS

Beeks alleges two types of error occurred in the prior proceedings. First, he alleges several instances of unobjected-to prosecutorial misconduct rising to the level of fundamental

---

[1] Idaho Criminal Jury Instruction 1508 states:

> All persons are capable of committing crimes, except those who committed the act or made the omission charged through misfortune or by accident when it appears that there was not evil design, intention or culpable negligence.

error.  Second, he contends that the district court erred in instructing the jury.  Each assignment of error will be addressed in turn.

## A.    Prosecutorial Misconduct

Beeks contends that the state engaged in prosecutorial misconduct by eliciting testimony regarding the existence of two prior no-contact orders and by repeatedly telling the jury that there was information the prosecutor was prohibited from mentioning.  While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair.  *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).  However, in reviewing allegations of prosecutorial misconduct, we are cognizant of the realities of trial.  *Id.*  Indeed, a fair trial does not mean a perfect trial.  *Id.*

Beeks made no contemporaneous objection at trial to either alleged instance of prosecutorial misconduct.  However, he argues that each incident constitutes fundamental error.  Generally, claims of error that were not preserved by objection below will not be considered for the first time on appeal.  *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).  However, Idaho appellate courts may still consider an unpreserved claim of error if the error resulted in a deprivation of the Fourteenth Amendment due process right to a fair trial in a fair tribunal, thereby rising to the level of fundamental error.  *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010).  In *Perry*, the Idaho Supreme Court clarified the fundamental error doctrine, including its application to allegations of prosecutorial misconduct.  It held that an appellate court should reverse based on unpreserved error only when the defendant persuades the court that:  (1) the alleged error violated one or more of the defendant's unwaived constitutional rights; (2) the alleged error is clear or obvious without the need for reference to any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the error affected the defendant's substantial rights, meaning that there is a reasonable possibility that the alleged error affected the outcome of the trial.  *Id.* at 226, 245 P.3d at 978.  Accordingly, we will analyze each claim of prosecutorial misconduct to determine whether it constituted fundamental error.

### 1. Additional evidence

Beeks asserts that it was prosecutorial misconduct for the state to repeatedly insinuate, first to the venire and then to the jury during closing argument, that there was additional evidence that the prosecutor was not allowed to talk about. Generally, great latitude is afforded both parties in questioning the venire during voir dire. *State v. Dunlap*, 155 Idaho 345, 369, 313 P.3d 1, 25 (2013); *State v. Lewis*, 126 Idaho 77, 81, 878 P.2d 776, 780 (1994). Additionally, both parties are given considerable latitude in making closing arguments to the jury, and both sides are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *Dunlap*, 155 Idaho at 369, 313 P.3d at 25; *State v. Martinez*, 136 Idaho 521, 525, 37 P.3d 18, 22 (Ct. App. 2001).

During voir dire, Beeks contends that the prosecutor committed misconduct during the following exchange with a prospective juror:

[PROSECUTOR]: Did that sour your taste for the whole system? Do you think you can be a fair and impartial juror?

[JUROR]: I don't think it has any bearing on my ability to judge the case as presented and to evaluate the information given.

[PROSECUTOR]: Thanks. That brings me to a good point here. You're going to hear a lot of things in the trial, and the stuff that's presented to you, you know, what evidence is versus what the--you know, what the lawyers. Can you tell the difference between what I'm telling you versus what the evidence is or what the defense attorney is telling you versus what the evidence is? There's a difference there.

And you're not going to be able to get everything maybe you want. I mean, it's funny how the criminal justice system works, but you only get the evidence that is relevant, that matters. So you have a certain law, and then you have to see whether it fits and whether it broke the law or not. And that's kind of it.

So I don't get to go into like all the reasons. I don't get to like, you know--this isn't judgment day, you know, at the end of your life. I'm not trying to, you know, say you're a good or bad person. But you only get to put so much evidence on. And there might be something else that you want to know, something else that you think well, I'd like to know this before I hit this guy with this, you know, with a conviction or a not guilty.

And what do you do with that? Do you think that enters into what you have to do today? Number--I'm going

|   |   |
|---|---|
| | to try to grab up people who haven't spoken yet. Number 198? |
| [JUROR]: | Try it again. |
| [PROSECUTOR]: | Okay. |
| [JUROR]: | I didn't get it the first time. |
| [PROSECUTOR]: | That's all right. So you may not be given all the information that you might think you want. Okay. But if you're given all of the information that's relevant, can you go ahead and make a verdict on this case or do you need more information if you just feel like: I want more? What do you do with that, with that feeling of: Oh, I wish I knew the whole story behind something? |
| [JUROR]: | You can only base your judgment on the information that you're given. You can't go with a what if. |
| [PROSECUTOR]: | Thank you. Right. So there's going to be some information here in this case, for example, that I am not going to get to talk about, I'm not going to get to like go on and on about, I might like to or not-- |
| THE COURT: | Counsel. |
| [PROSECUTOR]: | Judge, I'm sorry. |
| THE COURT: | I don't want you to give the implication that there's other information out there in this case. That's improper to do that. |
| [PROSECUTOR]: | I'm sorry. |
| THE COURT: | The jury will be given all the information that is relevant to this case, and it's improper to leave it open for them to speculate about the potential of other information out there. So don't go into that anymore. That's just speculation and-- |
| [PROSECUTOR]: | Okay, I'm sorry. What I was trying to say is that you'll be given just the information that is relevant to this case. And are you okay with that? Thank you. |

Beeks also contends that the prosecutor continued to reference information not in evidence through comments made during rebuttal closing argument. Beeks had argued during his closing argument that the state had failed to present sufficient evidence that Beeks had been charged with domestic assault or domestic battery, which is an element of the crime the state was required to prove. *See* I.C. §§ 18-920(2)(a), 18-918. In response, the prosecutor made the following comments during his rebuttal argument:

> Ladies and gentlemen, there's a reason why I didn't go into any gory detail here. Okay. I don't get to. And I would have drawn an objection had I done so. So it's a little bit disingenuous to then argue that [Beeks] wasn't charged

> with one of these crimes, domestic assault or domestic battery. He had been. That's what was marked on the no-contact order. The reason we don't go into details is because I'm not allowed to.

Attempts by the prosecutor "to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence . . . impacts a defendant's Fourteenth Amendment right to a fair trial"; therefore, such is reviewable as fundamental error. *Perry*, 150 Idaho at 227, 245 P.3d at 979; *see also State v. Jackson*, 151 Idaho 376, 381, 256 P.3d 784, 789 (Ct. App. 2011).

Beeks argues that these statements show the prosecutor's repeated referencing of evidence other than what was presented at trial was an attempt to get the jury to decide the case on that other evidence, thereby violating Beeks's Fourteenth Amendment due process right to a fair trial. We disagree. The comments, if interpreted as Beeks suggests, would constitute prosecutorial misconduct. However, it is not plain, clear, or obvious from the appellate record that the prosecutor was asking or encouraging the jury to decide the case based on evidence not presented at trial as opposed to ensuring that the jury would not decide the case based on perceived gaps in the state's presentation of evidence resulting from limitations on what evidence it was allowed to present. *Cf. Jackson*, 151 Idaho at 381-82, 256 P.3d at 789-90 (concluding that a claim of prosecutorial misconduct was not reviewable as fundamental error because it was not plain, clear, or obvious that the prosecutor was asking the jury to render a decision based on the prosecutor's personal opinion or belief rather than asking the jury to draw reasonable inferences from the trial evidence concerning the victim's credibility). The prosecutor never mentioned any specific evidence that was not introduced at trial or made any argument in favor of conviction based on unadmitted evidence. On the contrary, the state's closing argument relied primarily on the no-contact order and video-recorded conversation presented at trial as the basis for finding Beeks guilty.

Even assuming that the prosecutor's comments violated Beeks's due process right to a fair trial by attempting to secure a verdict on evidence not presented at trial, we conclude that any such error was harmless. The district court mitigated any potentially harmful effect of the alleged error by immediately admonishing the prosecutor during voir dire--in the jury's presence--to refrain from implying that there was other evidence not being presented in the case. The prosecutor complied with this directive, aside from responding in rebuttal closing argument

6

to Beeks's claim that the state had not presented sufficient evidence on an element of the charged crime. Moreover, his response relied on evidence admitted at trial--the no-contact order--and went so far as to again reiterate his inability to go into detail.

Additionally, the state provided and relied upon substantial evidence as to each element of the charged crime, including a copy of the no-contact order and its subsequent amendments and extensions, which Beeks had notice of prior to the prohibited contact, and a video recording of the prohibited contact, which established that Beeks continued to communicate with the victim even after learning that the no-contact order was still in effect. In light of the substantial incriminating evidence presented in this case, the lack of any contradictory evidence and the district court's contemporaneous admonishment of the prosecutor, there was not a reasonable possibility that the prosecutor's comments affected the outcome of the trial. Accordingly, Beeks has failed to show that the alleged misconduct constituted fundamental error.

### 2. Prior no-contact orders

Beeks also argues that the prosecutor committed misconduct by eliciting the following testimony from an investigator regarding multiple no-contact orders:

> Q. [PROSECUTOR]: With whom are the no-contact order--was the no-contact order in effect?
>
> A. I noted there was two. There was one issued in February, I believe February 11th, that had [the victim listed], and there's also I believe several children listed on that no-contact order. And then I noted another one that was in place June 24th of 2013 with just [the victim].

The prosecutor then referenced that testimony during his closing argument: "You're going to hear testimony or you did hear testimony, excuse me, from [the investigator] that there were multiple no-contact orders in place. Multiple." He again referenced it during his rebuttal closing argument:

> [PROSECUTOR]: You heard testimony there were multiple NCOs--NCOs, sorry--no-contact orders in effect. . . .
>
> . . . .
>
> And you heard testimony that the no-contact orders are put into effect for one year from the day's date. It wouldn't make any sense to say you're forbidden from having no contact--from having any contact with her, but I'm going to end this order effective immediately. It doesn't make any sense.

7

|                    | And so there was a typo. This wasn't the judge I think--well, maybe it was. I have no idea who filled it out. Could have been the judge or the clerk. They filled it out. The next day you can see, that's why we have the other things in here, showing that in fact the next day it was extended through 2015. Okay. And that's why you have this one, which is the amended one, one of the ones in effect. Okay. One of the ones. |
|--------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

Again, I didn't want to be unreasonably cumulative and throw all of them at you. Instead you just got the one, okay, this one no-contact order.

THE COURT: Ladies and gentlemen, I have to interrupt here. [Beeks] is charged with violating a specific no-contact order. It would be improper to speculate that there are other orders out there. [Beeks] is not charged with violating any other orders.

[PROSECUTOR]: He's charged--okay. So he's charged with this one order. It's all here, ladies and gentlemen. And you have before you the video where he talks about this very--these very no-contact orders. He knows they exist. There's no--you can--the evidence that shows that he knows that they exist is right before you.

In order to meet the first prong of the *Perry* fundamental error test, Beeks had to establish that the alleged prosecutorial misconduct violated one or more of his unwaived constitutional rights. Where the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, the fundamental error doctrine is not implicated. *State v. Garcia*, 156 Idaho 352, 356, 326 P.3d 354, 358 (Ct. App. 2014); *Jackson*, 151 Idaho at 380, 256 P.3d at 788. Indeed, if the presentation of evidence and associated argument in violation of an evidentiary rule satisfied the constitutional violation element of *Perry* because all evidentiary error implicates due process, the first prong of the *Perry* standard would be virtually eviscerated and the limits that *Perry* places on fundamental error review would be undermined. *Garcia*, 156 Idaho at 356-57, 326 P.3d at 358-59; *Jackson*, 151 Idaho at 379-80, 256 P.3d at 787-88; *see also State v. Norton*, 151 Idaho 176, 184-87, 254 P.3d 77, 85-88 (Ct. App. 2011). Beeks's claim is based on the improper admission of evidence and argument associated therewith, not the violation of a constitutional right. Thus, fundamental error review does not apply to this unobjected-to claim, and we will not address it further.

8

**B.      Instructional Error**

Beeks argues that the district court erred by failing to give a union of act and intent jury instruction. He also argues that the district court erred in refusing Beeks's request to instruct the jury that acts or omissions committed as a result of accident or misfortune are not criminal. Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

**1.      Union of act and intent instruction**

Beeks neither requested an instruction on the union of act and intent, nor did he object when one was not given. Ordinarily, a party may not claim that a jury instruction was erroneous unless the party objected to the instruction prior to the start of jury deliberations. I.C.R. 30(b). However, even without a contemporaneous objection at trial, claims of instructional error may be reviewed for the first time on appeal under the fundamental error doctrine. *State v. Southwick*, 158 Idaho 173, 345 P.3d 232, 240 (Ct. App. 2014); *see also State v. Anderson*, 144 Idaho 743, 748-49, 170 P.3d 886, 891-92 (2007). Thus, Beeks must establish that this omission constituted fundamental error. *See Perry*, 150 Idaho at 226, 245 P.3d at 978.

Idaho Code Section 18-114 provides that in "every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." This statute provides the basis for ICJI 305, which Beeks claims the district court erred in failing to give to the jury. A union of act and intent jury instruction should generally be given for a general-intent crime. *See State v. Baldwin*, 69 Idaho 459, 464, 208 P.2d 161, 164 (1949); *State v. Hoffman*, 137 Idaho 897, 900, 55 P.3d 890, 893 (Ct. App. 2002); *see also* ICJI 305 Comment ("This instruction is unnecessary when the crime charged requires a specific mental element and the jury is properly instructed regarding that mental element."). However, it is unresolved whether such an instruction is necessary in order for the instructions, when viewed as a whole, to fairly and accurately reflect the applicable law.

We need not resolve this issue here because Beeks's claim is clearly decided by the third *Perry* prong. Indeed, even if the failure to give a union of act and intent jury instruction for a

general intent crime constituted a violation of Beeks's unwaived constitutional right to a fair trial, Beeks has failed to show a reasonable possibility that the error affected the outcome of the trial. *See Perry*, 150 Idaho at 226, 245 P.3d at 978. Beeks's claim of error relies upon his theory that, if he did not intentionally initiate the prohibited contact, or did so under false pretenses created by the victim, then the entire contact could not constitute a violation of the applicable no-contact order. This is incorrect. The state did not need to show that Beeks initiated the prohibited contact; instead, the state needed only to establish that Beeks had contact with the victim in violation of the valid no-contact order and with notice that the no-contact order was in effect. *See* I.C. § 18-920(2); ICJI 1282. Indeed, when a criminal statute does not set forth any specific mental state as an element of the crime, the intention with which the criminal act is done, or the lack of criminal intent, is immaterial. *State v. Fox*, 124 Idaho 924, 925-26, 866 P.2d 181, 182-83 (1993). Moreover, the general-intent element is satisfied if the defendant knowingly performed the interdicted act, or by criminal negligence failed to perform the required act, regardless of whether the defendant intended to commit a crime. *Fox*, 124 Idaho at 925-26, 866 P.2d 182-83; *see also Baldwin*, 69 Idaho at 465-66, 208 P.2d at 165-66 (noting that, where the statute defining the offense does not require any specific intent, the willful or knowing commission of the act is sufficient).

Here, the video recording of Beeks's conversation with the victim, which continued even after the victim informed him that the no-contact order was still in effect, established that Beeks willfully and knowingly committed the prohibited act. The state further introduced substantial evidence to meet the other elements of the charged offense, as previously discussed. Thus, the absence of a unity of act and intent instruction did not have a reasonable possibility of affecting the outcome of Beeks's trial. As a result, Beeks has failed to show that the district court's omission of that instruction constituted fundamental error.

### 2. Accident or misfortune jury instruction

Beeks contends that the district court erred by rejecting his request to give ICJI 1508, which instructs a jury on the defense of accident or misfortune. The jury instruction is derived from I.C. § 18-201, which codifies the defense of mistake or accident. *State v. Dolsby*, 143 Idaho 352, 353-54, 145 P.3d 917, 918-19 (Ct. App. 2006). That statute provides, in pertinent part, that "all persons are capable of committing crimes, except . . . persons who committed the

act or made the omission charged, through misfortune or by accident, when it appears that there was not evil design, intention or culpable negligence." I.C. § 18-201(3). Beeks argues that the central issue at trial was whether Beeks accidentally or unintentionally violated the no-contact order as a result of the victim's allegedly deceptive and subversive activities in initiating contact with him, which he claims required the instruction on accident or misfortune.

Idaho Code Section 19-2132(a) requires that a trial court must instruct a jury on "all matters of law necessary for their information." A requested instruction must be given where: (1) it properly states the governing law; (2) a reasonable view of the evidence would support the defendant's legal theory; (3) it is not addressed adequately by other jury instructions; and (4) it does not constitute an impermissible comment as to the evidence. *State v. Fetterly*, 126 Idaho 475, 476-77, 886 P.2d 780, 781-82 (Ct. App. 1994); *see also State v. Evans*, 119 Idaho 383, 385, 807 P.2d 62, 64 (Ct. App. 1991). However, a requested jury instruction should not be given if it is unsupported by any reasonable view of the evidence or is an erroneous statement of the law. *State v. Babb*, 125 Idaho 934, 941, 877 P.2d 905, 912 (1994); *State v. Bronnenberg*, 124 Idaho 67, 71, 856 P.2d 104, 108 (Ct. App. 1993).

Here, no reasonable view of the evidence supported Beeks's claim that the entire twenty-seven-minute conversation with the victim was the result of accident or misfortune. Beeks presented no evidence at trial supporting his claim that the victim initiated the prohibited contact under false pretenses of which Beeks was unaware. On the contrary, the testimony by the state's witness indicated that Beeks initiated the contact, and the video recording of the conversation makes it apparent that Beeks knew who was on the other end of the videophone call even before it began and despite the pseudonyms employed. Moreover, the video recording of the conversation shows that, after approximately fifteen minutes, the victim informed Beeks that the no-contact order was still in effect. Instead of immediately terminating the conversation after receiving that notice, Beeks continued to have contact with the victim in violation of the no-contact order for approximately twelve more minutes. Whether a specific contact violates a no-contact order is not indelibly set at the outset of the contact; such a view would defeat the purpose of I.C. § 18-920. Instead, a violation occurs as soon as the subject of a valid no-contact order has any form of contact with the protected person that is prohibited by the order while aware that the no-contact order is in effect. *See* I.C. § 18-920(2); ICJI 1282; *see also State v.*

11

*Hochrein*, 154 Idaho 993, 999, 303 P.3d 1249, 1255 (Ct. App. 2013) (noting that prior notice of a no-contact order is an essential element of proving a violation thereof). The no-contact order in effect here prohibited Beeks from communicating with the victim "in any form." The video recording of the conversation makes clear that Beeks's contact with the victim via videophone, especially after the victim informed him that the no-contact order was still in effect, was not the result of accident or misfortune. As a result, no reasonable view of the evidence supported Beeks's claim of accident or misfortune, so the district court did not err by refusing to instruct the jury as to that defense.[2]

## III.

## CONCLUSION

Beeks has failed to establish that either claim of prosecutorial misconduct constituted fundamental error. Beeks also failed to establish that the absence of a jury instruction on the unity of act and intent constituted fundamental error. Additionally, no reasonable view of the evidence supported Beeks's claim that his violation of the no-contact order was the result of accident or misfortune, so the district court did not err in rejecting his requested jury instruction to that effect. Accordingly, Beeks's judgment of conviction for felony violation of a no-contact order is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.

---

[2]     Beeks asserts that our recent case of *State v. Hopkins*, 158 Idaho 191, 345 P.3d 250 (Ct. App. 2015), supports this claim. Not so. Unlike the offense here, *Hopkins* involved a specific intent crime--malicious injury to property--which resulted from the defendant slamming a courtroom door into a wall. The defendant testified that she did not intend to damage the wall. The district court denied the defendant's request to give the accident or misfortune instruction, which we held to be error because the crime of malicious injury to property required the state to prove the specific intent to injure the property. Thus, the criminal intent to injure property without a lawful excuse was a necessary element of that offense, making accident or misfortune a valid defense. *Id.* at 196-97, 345 P.3d at 255-56.

Conversely here, no criminal intent was necessary to commit the offense of violation of a no-contact order, only the intent to commit the prohibited act--contact with the victim. *See Fox*, 124 Idaho at 925-26, 866 P.2d at 182-83 (holding that, when a criminal statute does not set forth any mental state as an element of the crime, the intention with which the criminal act is done, or the lack of criminal intent, is immaterial). As a result, *Hopkins* has no application to this case.