**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49532**

| | |
|---|---|
| STEVEN WILLIAM LUNDQUIST, | ) |
| | ) **Filed:  August 30, 2023** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Gerald F. Schroeder, District Judge.  Hon. Thomas P. Watkins, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming denial of petition for post-conviction relief, <u>affirmed</u>.

Stephen William Lundquist, Boise, pro se appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Steven William Lundquist appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming the denial of his petition for post-conviction relief.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2014, Lundquist was charged with first degree stalking, a felony.  After a jury found him guilty, the district court sentenced Lundquist to a unified term of five years, with a minimum period of confinement of two years; suspended the sentence; and placed Lundquist on probation for five years.  Thereafter, Lundquist met the victim.  After a probation violation, he was reinstated on probation with an additional condition that he have no contact with the victim.  In 2018,

1

Lundquist pled guilty to stalking the victim (second degree stalking, a misdemeanor). He was returned to probation in the felony case and granted probation in the misdemeanor case. The magistrate court in the misdemeanor case entered a no-contact order (NCO) prohibiting Lundquist from having contact with the victim.

On the same day Lundquist was released from custody on the misdemeanor charge, he was walking home. The victim drove by him, stopped her vehicle, and offered him a ride home. In the ensuing months Lundquist and the victim frequently saw each other but their relationship was unstable. There were accusations of infidelity. At one point, Lundquist filed for and received a civil protection order against the victim based upon his belief that the victim had vandalized his car. That order was later dismissed when Lundquist realized the victim had not been involved in the incident. By December 2018, while the NCO was in effect, Lundquist and the victim had resumed contact with each other. On December 31, 2018, Lundquist's probation officer found the victim at Lundquist's home. The State then charged Lundquist with violating the NCO and filed a motion for probation violation in the 2014 felony stalking case. Before the trial on the NCO charge, the victim filed a motion to quash the NCO and submitted a letter in support. During the hearing on that motion, the victim withdrew the motion to quash and claimed that Lundquist had actually drafted the letter and that it contained falsehoods. The victim testified at the trial on the NCO violation. A jury found Lundquist guilty of violating the NCO. He admitted the probation violation in the felony case and his probation was revoked.

A few weeks before the trial on the NCO charge, Detective Dozier conducted an interview with the victim in connection with an investigation of a possible charge against Lundquist for filing a false document with the court--the letter the victim had submitted with her motion to quash the NCO. Detective Dozier prepared a report (Dozier report) in connection with the interview which included the victim's statements regarding contacts with Lundquist at various times, including contacts at his home and various aspects of their relationship. Some of the statements made by the victim during the interview were inconsistent with her testimony at the trial. Neither the interview with the victim nor the Dozier report were disclosed to Lundquist until after the trial on the NCO charge. It appears that Lundquist received this information from the State as part of discovery in the false documents case involving the letter. Lundquist filed a petition for post-conviction relief in the NCO case alleging that nondisclosure of the interview with the victim was a violation of his

2

rights[1] and therefore his conviction was obtained in violation of the Constitution of the United States or in violation of the laws or Constitution of the State of Idaho.[2] After an evidentiary hearing, the magistrate court denied the petition. Lundquist appealed and the district court affirmed. Lundquist again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the trial court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the trial court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[2] Lundquist also filed a petition for post-conviction relief in the 2014 felony stalking case based on the same facts. He alleged that, had the Dozier report been disclosed prior to trial on the NCO charge, he would not have been found guilty and his probation in the 2014 stalking case would not have been revoked. The State's motion to dismiss was granted. This Court, in an unpublished opinion, affirmed. *See Lundquist v. State*, Docket No. 48741 (Ct. App. Oct. 12, 2022).

72, 73, 764 P.2d 439, 440 (Ct. App. 1988).  We exercise free review of the trial court's application of the relevant law to the facts.  *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

**III.**

**ANALYSIS**

Due process requires all exculpatory evidence known to the State or in its possession to be disclosed to the defendant.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Grube v. State*, 134 Idaho 24, 27, 995 P.2d 794, 797 (2000).  There are three essential components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.  *Strickler v. Greene*, 527 U.S. 263, 263 (1999).  Prejudice is shown where the favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.  *Thumm v. State*, 165 Idaho 405, 422, 447 P.3d 853, 871 (2019).  A reasonable probability of a different result is accordingly shown when the government undermines the confidence in the outcome of the trial.  *Id.* at 417, 447 P.3d at 865.

Following an evidentiary hearing on Lundquist's petition for post-conviction relief, the magistrate court entered an order stating that the first two prongs of the *Brady* test had been satisfied--that the Dozier report was "at least impeaching, and that it was not disclosed."  The magistrate court concluded, however, that Lundquist failed to meet the third element of the test--prejudice--because he failed to show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  On appeal, Lundquist argues that he did suffer prejudice because, if he had the Dozier report prior to the NCO violation trial, the result would have been different.  He asserts the Dozier report would have raised a reasonable doubt about his *mens rea* to violate the NCO and would have enabled him to raise a coercion defense.  He also argues that the victim would have been shown to be not credible because of her inconsistent statements.

**A.      *Mens rea* and Victim's Credibility**

Lundquist argues that he could have used the Dozier report to impeach the victim's testimony and show that she was not credible to the extent that "the jury could have questioned

4

the validity of *anything* [the victim] said." There were inconsistencies between the victim's testimony at trial and her statements in the Dozier report, but two probation and parole officers testified that they observed the victim with Lundquist in his home. Idaho Code Section 18-920 (violation of a no-contact order) provides, in relevant part:

> (1) When a person is charged with or convicted of an offense under section 18-901, 18-903, 18-905, 18-907, 18-909, 18-911, 18-913, 18-915, 18-918, 18-919, 18-6710, 18-6711, 18-7905, 18-7906 or 39-6312, Idaho Code, or any other offense for which a court finds that a no contact order is appropriate, an order forbidding contact with another person may be issued. A no contact order may be imposed by the court or by Idaho criminal rule.
> (2) A violation of a no contact order is committed when:
> (a) A person has been charged or convicted under any offense defined in subsection (1) of this section; and,
> (b) A no contact order has been issued, either by a court or by an Idaho criminal rule; and,
> (c) The person charged or convicted has had contact with the stated person in violation of an order.

Violation of the statute does not require specific intent. To establish a violation of I.C. § 18-920, the State need only prove that the defendant had contact with the victim in violation of a valid NCO with notice that the NCO was in effect. *State v. Beeks*, 159 Idaho 223, 231, 358 P.3d 784, 792 (Ct. App. 2015). When a criminal statute does not set forth any specific mental state as an element of the crime, the intention with which the criminal act is done, or lack of criminal intent, is immaterial. *State v. Fox*, 124 Idaho 924, 925-26, 866 P.2d 181, 182-83 (1993). The general intent element is satisfied if the defendant knowingly performed the proscribed act, or by criminal negligence failed to perform the required act, regardless of whether the defendant intended to commit a crime. *Id*. at 926, 866 P.2d at 183.

The State was only required to prove that Lundquist had contact with the victim in violation of a valid NCO with notice that the NCO was in effect. The magistrate court correctly determined that the victim's testimony would not have been material to these issues.

**B.    Duress**

Duress is an affirmative defense. Lundquist asserts that he was coerced by the victim into having contact with her and giving her money. He argues that he would have been able to present evidence of extortion, coercion, and duress if he had the Dozier report at trial. In support, he points to inconsistencies between the victim's testimony and the Dozier report regarding the victim's

financial dependence on Lundquist, arguing that the victim was financially dependent upon him which he believes would have resulted in an inference that the victim had motive to extort money from him and force him to have contact with her. The magistrate court found that, according to the Dozier report, the victim enjoyed the security Lundquist provided, that he would pay her bills and take care of her and that he was paying her rent and providing monetary benefits. However, the magistrate court also found that the report contained no information not known or brought forward at trial regarding the victim's alleged financial dependence. Therefore, Lundquist could not have been prejudiced by late disclosure of this evidence.

Lundquist also argues that that the Dozier report would have shown that the victim claimed she was in fear of Lundquist but that her testimony at trial showed that she was not. His argument is that the Dozier report would have shown that she was keeping the NCO in place in order to extort money from him and she needed to claim she feared Lundquist in order to accomplish that end. Like the magistrate court, we do not perceive how the victim's statement in the Dozier report that she was in fear of Lundquist reasonably supports an inference of duress or extortion.

Similarly, Lundquist argues that the victim misrepresented the nature of her relationship with him as an on-going one in order to keep the NCO in place so she could continue to extort money from him and coerce him. Some of the victim's statements about the nature of her relationship with Lundquist were inconsistent. The magistrate court best explained the relationship between the victim and Lundquist as follows:

> [T]he contents of the [Dozier report] do not prove that [Lundquist] and [the victim] were not in some kind of a relationship. While [the victim] did tell Det. Dozier that she didn't want the no-contact order terminated, and that she was fearful of him, she also told Det. Dozier that she felt sorry for [Lundquist] and that she enjoyed the security he provided. This up-and-down nature of their relationship came up during the trial when [the victim] testified about [Lundquist's] efforts to get a civil protection order against her when he believed that she had thrown a rock through his windshield. The victim also testified about discussions she and [Lundquist] had about false claims of infidelity. Her testimony showed that she and [Lundquist] had the typical highs and lows of many relationships, and Det. Dozier's report reinforced that. The court finds that [Lundquist] has not carried his burden of establishing prejudice on this issue.

The magistrate court did not err in finding that Lundquist failed to establish prejudice on this issue.

Lundquist also supports his claim of coercion by reference to an affidavit from his trial counsel who averred that Lundquist told trial counsel prior to trial that the victim was threatening

6

Lundquist with requesting more criminal charges if he did not pay the victim back for attorney fees she incurred in defending the NCO Lundquist obtained against her. Trial counsel averred that duress and coercion were discussed with Lundquist but abandoned because "based on the evidence at the time, [trial counsel] did not feel that this was a viable defense." As noted by the magistrate court, trial counsel's affidavit did not state that the Dozier report provided evidence of such a defense.

In rejecting Lundquist's claim that he was acting under duress the magistrate court also relied upon the fact that Lundquist had sought and received a civil protection order against the victim which undermined his claim that he could not tell anyone about the extortion because it would result in legal problems.[3] Finally, the magistrate court considered Lundquist's allocution before the district court at the probation disposition hearing at which Lundquist stated that he was happy to see the victim on December 31 and that she had been on her way to the airport to pick up her daughter but stopped to visit with Lundquist. According to Lundquist she also asked a favor of him--to borrow his four-wheel drive vehicle to drive on the snow. Lundquist said he was flattered by this request and told the district court that he knew it was wrong to have contact with the victim and that it would not happen again. As the magistrate court observed, Lundquist knew he had a right to a hearing to determine whether he had violated his probation and he knew he was facing prison for what was his third probation violation. We agree with the magistrate that Lundquist's explanation that he did not want to bring up his claim that he was being extorted by the victim because he did not want to anger or upset the judge defies logic.

Regarding the defense of duress or coercion, the magistrate court concluded "the lack of supporting evidence for the [duress] defense is due to a simple fact: that there is none because the allegation is not true." Plainly, the magistrate court found Lundquist's testimony on this issue to

---

[3] The date of the civil protection order was found by the magistrate court to be in September 2018. Lundquist asserts that the actual date was March 6, 2018. His request to augment the record to reflect the correct date was denied because the issue was not presented to or considered by the magistrate court or the district court. Nonetheless, the State does not dispute that Lundquist filed for the protection order against the victim on March 6, 2018. Whether the protection order was sought in September or March 2018 is of little relevance. Lundquist argues that the victim did not begin to coerce him to have contact with her until August but his act of requesting the protection order, whenever the request was made, shows that he was willing and able to assert his claims against the victim through legal process.

be untrue. The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the trial court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin*, 115 Idaho at 73, 764 P.2d at 440. In the end, Lundquist had no credible evidence to support his claim that he could have presented an affirmative defense of coercion or duress based upon inconsistencies in the Dozier report.

Lundquist did not meet his burden to show prejudice caused by the State's failure to disclose the Dozier report prior to trial. Having reviewed the record, we hold that the magistrate court did not err in denying Lundquist's petition for post-conviction relief.

## IV.
## CONCLUSION

Lundquist has failed to meet his burden of showing that he was prejudiced as a result of the State's nondisclosure of the Dozier report. Accordingly, the decision of the district court, affirming the magistrate court's denial of Lundquist's petition for post-conviction relief, is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.