**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 47521

| | | |
|---|---|---|
| **STATE OF IDAHO** | ) | |
| | ) | **Boise, April 2021 Term** |
| **Petitioner-Respondent,** | ) | |
| | ) | **Filed: August 4, 2021** |
| **v.** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| **MOAWIA OMER AHMED,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald F. Schroeder, Senior District Judge.

The decision of the district court is <u>affirmed</u>.

Anthony R. Geddes, Ada County Public Defender, Boise, attorney for Appellant. Sarah E. Tompkins argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. John C. McKinney argued.

_____

BEVAN, Chief Justice.

While this is a case about a conviction for violating a protection order, the principal focus is on the statutes and guidelines governing domestic violence courts in Idaho. Moawia Omer Ahmed was charged with violating a protection order under Idaho Code section 39-6312. At his arraignment, Ahmed's case was transferred to the Ada County Domestic Violence Court ("DVC"). In his pretrial motions, Ahmed moved the magistrate court to dismiss the charge on constitutional grounds. The magistrate court denied Ahmed's motion, the case proceeded to trial, and, ultimately, a jury found Ahmed guilty.

Ahmed appealed his conviction to the district court. Ahmed maintained the magistrate court erred in denying his motion to dismiss. Ahmed also argued the magistrate court erred by: 1) admitting hearsay evidence; 2) failing to properly instruct the jury; and 3) requiring Ahmed to undergo a domestic violence assessment. The district court, in its

1

intermediate appellate capacity, affirmed. Ahmed appeals the district court's decision. We likewise affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 2, 2017, based on a petition filed under Idaho Code section 39-6304[1] by Nabila Hamid, Ahmed's wife, a magistrate court issued a protection order against Ahmed. The protection order remained effective for one year, as authorized by Idaho Code section 39-6306.[2] The protection order listed Nabila as the protected party, as well as Ahmed and Nabila's two minor sons, S.O. and A.A. The protection order prohibited Ahmed from knowingly remaining within three-hundred feet of S.O.'s elementary school, among other locations not pertinent to this appeal.

On December 12, 2017, officers with the Boise Police Department responded to the elementary school after the school secretary called and informed police Ahmed had been there and attempted to visit S.O. Based on this call, Ahmed was ultimately arrested and cited for violating the protection order, a misdemeanor in violation of Idaho Code section 39-6312(1).

At Ahmed's arraignment, the prosecutor assigned Ahmed's case to DVC.[3] In his pretrial motions, Ahmed moved the magistrate court to dismiss the charge pursuant to Idaho Criminal Rule 12(b)(2), alleging "constitutional defects." Ahmed argued:

---

[1] Idaho Code section 39-6304(2) allows any person to "seek relief from domestic violence by filing a petition based on a sworn affidavit with the magistrate division of the district court, alleging that the person or a family or household member, whether an adult or a child, is the victim of domestic violence."

[2] After the filing of a petition, a hearing, and "a showing that there is an immediate and present danger of domestic violence," the court may issue a protection order for a period not to exceed one year. Such an order proscribes the respondent from engaging in certain enumerated activities, including "coming within one thousand five hundred (1,500) feet or other appropriate distance" of a school frequented by the children of a petitioner who has custody of them. *See* I.C. § 39-6306(1)(a)–(i).

[3] It is undisputed that in Ada County the prosecutor determines what cases are eligible for DVC. It is also undisputed that the eligibility process had not been memorialized in writing when Ahmed was placed into DVC. The process was explained by the prosecutor as follows: "cases that are screened into DVC are typically a combination of folks that need DV, mental health, and substance abuse treatment. We try to put in cases that we perceive to have high risk, high lethality. However, cases that are selected are a function of prosecutorial discretion." While the concurrence makes note of this fact as a potential violation of Ahmed's rights, our ultimate conclusion is based on the lack of proof to show any disparate treatment for Ahmed in the case presently before us. Whether Ada County's procedure violates due process when a defendant is "screened into" DVC and then forced to attend extra meetings and pay extra fees is a question for another day that we do not reach, since there is no substantial proof that Ahmed was ever required to participate in those parts of the DVC or subjected to these requirements after his conviction.

2

> First, the [protection order] entered in October 2018 violated the separation of powers doctrine when the judiciary subsumed the role of the legislature by issuing an order defining criminal conduct. Second, the [DVC] lacks the statutory authority to adjudicate the case because no written criteria for the eligibility, protocol and processes for discharge of participants exists, as required by Idaho Code and the Idaho Supreme Court Guidelines. . . .

As to his second argument, Ahmed also claimed that the "lack of set rules and procedures in DVC violates [Ahmed's] right to procedural due process." The magistrate court denied Ahmed's motion to dismiss.

Ahmed sought a permissive appeal of the denial of his motion to dismiss from the district court. The district court denied Ahmed's permissive appeal and remanded the case to the "[m]agistrate [d]ivision for continued hearings as currently set[.]" The case proceeded to a jury trial.

At trial, the State called the school secretary to testify. The secretary testified that Ahmed went to the main office at the elementary school and asked to see his son, S.O. The secretary also testified that Ahmed left after she informed him that S.O. was not on campus because school had ended early that day. The secretary explained that after Ahmed left she confirmed in S.O.'s file that Ahmed was subject to the protection order and she called the police to inform them of Ahmed's visit to the school. The State later moved to admit an audio recording of the phone call between the school secretary and the police dispatcher through the dispatcher's testimony. Ahmed objected on foundation and hearsay grounds. The State, in response, argued the evidence was admissible under the present sense impression to the rule against hearsay. The magistrate court agreed and admitted the recording.

At the completion of the evidentiary portion of the trial, the magistrate court, along with the parties, addressed the proposed post-proof jury instructions. Ahmed advocated for the magistrate court to include an intent element to the instruction that listed the elements required for a violation of a protection order. The magistrate court declined to include an intent element in the instruction.

The jury found Ahmed guilty of violating the protection order. The magistrate court entered a judgment of conviction and sentenced Ahmed to 365 days in jail, with credit for two days served and 363 suspended for two years of probation, with the first year supervised. The court also suspended a $1,000 fine and ordered that Ahmed pay court costs.

3

Additionally, the magistrate court ordered Ahmed to "complete a domestic violence evaluation."

Ahmed appealed to the district court. Ahmed argued the magistrate court erred by: 1) denying Ahmed's motion to dismiss; 2) admitting the audio recording under the present sense impression exception to the rule against hearsay; 3) failing to include an intent element in the jury instructions; and 4) ordering Ahmed to undergo a domestic violence evaluation as part of his sentence. The district court affirmed the magistrate court. Ahmed timely appealed the district court's decision.

## II. QUESTIONS ON APPEAL

1.  Did the district court err in affirming the magistrate court's denial of Ahmed's motion to dismiss?

2.  Did the district court err in affirming the magistrate court's admission of the audio recording of the school secretary's phone call under the present sense impression exception to the rule against hearsay?

3.  Did the district court err in affirming the magistrate court giving a jury instruction that did not include an intent element for violation of a protection order?

4.  Did the district court err in affirming Ahmed's sentence?

5.  Is reversal of Ahmed's conviction necessary under the cumulative error doctrine?

## III. STANDARD OF REVIEW

"On review of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *State v. Lantis*, 165 Idaho 427, 428, 447 P.3d 875, 876 (2019). The standard is as follows:

> Th[is] Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Ellis v. Ellis*, 167 Idaho 1, 6–7, 467 P.3d 365, 370–71 (2020) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013)). "[T]his Court does not review the decision of the magistrate court. Rather, we are procedurally bound to affirm or reverse the decisions of the district court." *Id*. at 7, 467 P.3d at 371 (quoting *Pelayo*, 154 Idaho at 859, 303 P.3d at 218 (internal citations and quotations omitted)).

## IV. ANALYSIS

4

Ahmed asserts the same errors here that he did before the district court. First, Ahmed argues the district court erred in affirming the magistrate court's denial of his motion to dismiss because both the DVC process and Idaho Code section 39-6312 are unconstitutional. Second, Ahmed argues the district court erred in affirming the magistrate court's admission of hearsay evidence because the trial court's error was not harmless. Third, Ahmed argues the district court erred in affirming the magistrate court's jury instructions because the magistrate court failed to provide an instruction on the requisite intent of violating a protection order. Fourth, Ahmed argues the district court erred in affirming the magistrate court's sentence that ordered Ahmed undergo a domestic violence evaluation because the sentence was based on charges of which Ahmed had been acquitted. Last, Ahmed argues, if the errors individually do not warrant reversal, reversal of his conviction is necessary under the cumulative error doctrine. For the reasons below, we affirm the district court's decision.

## A. The district court did not err in affirming the magistrate court's denial of Ahmed's motion to dismiss.

When confronted with Ahmed's motion to dismiss the charge against him based on constitutional defects with the DVC process, the magistrate court denied the motion, explaining:

> I think that a defendant does not . . . opt into this court, if he's assigned to this court, the defendant is in this court, but he's entitled to all the due process considerations. The defendant does not have to plead guilty to anything . . . he or she would be entitled to have a trial, would be entitled to have an attorney appointed or have an attorney of their own choice represent them and they would be entitled to have a pretrial conference, a jury trial. Also[,] there are [a] number of post-adjudication reviews.
>
> If the defendant is found not guilty . . . then the case is simply not in this court.
>
> So, overall, I think this is a due process court. . . . [O]n those grounds and on the constitutional grounds that are related, I don't think there is any particular liberty interests that a defendant can assert . . . that a defendant would be entitled to have the case handled by a judge not involved with domestic violence court.

The district court affirmed. First, the district court held the DVC process did not violate Ahmed's right to due process because Ahmed articulated no "rights he would have been afforded in a regular misdemeanor court proceeding that he was not afforded by the domestic violence court proceeding, nor [did] he set forth any violation of fundamental

5

fairness or loss of any ability to mount a defense to the allegations of the State." Second, the district court held the DVC process did not violate separation of powers because Ahmed established no sentencing prejudice as a result of the DVC structure which occurs prejudgment. Last, as for the constitutionality of Idaho Code section 39-6312, the district court held Ahmed "failed to overcome the strong presumption of the validity of the statute (or statutes) at issue" because the "underlying statute [Idaho Code section 39-6306] provides parameters on the terms of the protection order, and it allows the court to fashion the protection order within those parameters."

Ahmed asserts the district court erred. In regards to the DVC process, Ahmed argues the Idaho Domestic Violence Court Policies and Guidelines[4] require *courts* in Idaho to "establish written, meaningful criteria" in determining when a case should be diverted to DVC. Thus, Ahmed argues the process currently employed by DVC—the *prosecutor* determining what cases are eligible—violates his right to due process and the separation of powers. According to Ahmed, the process impedes his right to a fair and impartial judiciary because the prosecutor determines eligibility, thereby serving as both the accuser and adjudicator. In addition, permitting the prosecutor to determine the eligibility for DVC violates separation of powers because the legislature has exclusively granted that power to the judiciary. Ahmed maintains the process is prejudicial because "[p]lacement in [DVC] results in a presumptive result for restrictions on liberty and property that do not otherwise apply to similar charges in non-[domestic violence courts]." Second, Ahmed argues Idaho Code section 39-6312 violates separation of powers because the statute allows the court to define criminal conduct.

Idaho Code section 32-1409 provides "[t]he district court in each county may establish a domestic violence court in accordance with the policies and procedures adopted by the [S]upreme [C]ourt based upon recommendations by the committee[5]. . . ." I.C. § 32-1409(1).

---

[4] *See* Idaho Domestic Violence Court Policies and Guidelines (2010), https://isc.idaho.gov/dv_courts/DV_Court_Policies_and_Guidelines_revised_4.15.pdf.

[5] The "committee" refers to the committee established by this Court, which consists of the "judicial, executive and legislative branches . . . ." The committee serves to "implement a coordinated family court services plan for a comprehensive response to children and families in the courts" and must "recommend, for adoption by

The committee shall recommend policies and procedures for domestic violence courts addressing eligibility, identification and screening, assessment, treatment and treatment providers, case management and supervision, judicial monitoring, supervision of progress and evaluation. The committee shall also solicit specific domestic violence court plans from each judicial district, recommend funding priorities for each judicial district and provide training to ensure the effective operation of domestic violence courts.

I.C. § 32-1409(2).

In accordance with section 32-1409, this Court has developed policies to assist in the operation of Idaho's domestic violence courts. The policies provide the "essential elements" for domestic violence courts, which include, most relevant here, methods governing case assignment.[6] The policies provide:

a. Each district *shall develop written standards for admission into domestic violence court* including the types of cases that will be identified for inclusion, i.e., criminal domestic violence, civil and criminal orders of protection involving the same parties, divorce, custody, child protection, and any other criminal cases that may impact the well-being of family members such as substance abuse charges, etc. No person has a right to be admitted into a domestic violence court. [I.C. § 32-1409(3)][.]

b. *Each domestic violence court shall establish written criteria for eligibility, protocol or processes for screening parties for eligibility and discharge of participants, if participation is restricted.*

(Emphasis added). The policies explain, "[n]ot all models for domestic violence court are the same," and that the guidelines are intended "to provide a sound and consistent foundation for the effective operation and ongoing evaluation of Idaho's domestic violence courts and incorporate research-based criteria to provide the optimum opportunity for success."

At the time of Ahmed's case, the DVC process in Ada County had not been memorialized in writing. Even so, each participant received a handbook that explained: "[t]he Ada County Prosecutor and the Boise City Prosecutor screen cases into DV[C] and

---

the [S]upreme [C]ourt, policies and procedures that will carry out the purposes of [the Coordinated Family Services] chapter." I.C. § 32-1403.

[6] In 2009, the Idaho Legislature provided for the expansion of domestic violence courts "in accordance with the policies and procedures adopted by the [S]upreme [C]ourt[.]" *See* I.C. § 32-1409. Heeding this authority, this Court finalized the Policies in January 2010. *See Idaho DV Court History*, ISC.GOV, https://isc.idaho.gov/domestic-violence/dvc-court-history (last visited Apr. 30, 2021).

the case will remain in the DV[C] until both the resolution of the criminal case and conclusion of the probationary period." The handbook also provided that "[a] vast majority of participants will be ordered to two years of supervised probation and will be engaged in this program for this length of time." The handbook also explained that a participant may be "screened into the DV[C] program" following arrest but the participant is still entitled to an attorney and that "[t]he goal of the DV[C] is to have cases resolved by way of plea or jury trial within six weeks of initial appearance in DV[C]."

    1.  <u>This Court will not reach Ahmed's separation of powers argument as it relates to the DVC process because Ahmed failed to raise the issue before the magistrate court.</u>

Ahmed argues the current process of unilateral determination of eligibility and screening by the prosecutor is unconstitutional. According to Ahmed, the DVC process violates separation of powers because the prosecutor is performing duties exclusively reserved for the judiciary. However, Ahmed failed to argue this point in his motion to dismiss before the magistrate court; it was not until his appeal to the district court that Ahmed raised this specific issue. Despite Ahmed's failure to set forth the separation of powers issue before the magistrate court and the appellate standard that "[i]ssues not raised below will not be considered by [appellate courts], and the parties will be held to the theory upon which the case was presented to the lower court," *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019) (quoting *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017)), the district court addressed Ahmed's concerns. It is clear from the record that Ahmed failed to raise a separation of powers issue *as it relates to the DVC process* before the magistrate court and the magistrate court made no ruling regarding that specific issue. As a result, we hold the district court improperly ruled on the issue and the district court's decision is reversed. *State v. Rubbermaid Inc.*, 129 Idaho 353, 357, 924 P.2d 615, 619 (1996).

    2.  <u>The DVC process did not violate Ahmed's right to due process.</u>

In its briefing before this Court, the State argued Ahmed's contention regarding the alleged due process violation is moot. " 'An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded' by judicial relief." *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010) (quoting *Koch v. Canyon Cnty.*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008)). "Idaho law parallels the United States Supreme

8

Court in that mootness applies not only to a dead issue, but also when the appellant lacks a legal interest in the outcome." *State v. Hoyle*, 140 Idaho 679, 682, 99 P.3d 1069, 1072 (2004). As such, "this Court cannot hear and resolve an issue that 'presents no justiciable controversy and a judicial determination will have no practical effect on the outcome.' " *Id*. (quoting *Idaho Sch. for Equal Educ. Opp. v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281, 912 P.2d 644, 649 (1996)).

According to the State, the remedy Ahmed requested below for the alleged violation was removal from DVC, not dismissal of the charge altogether. The State maintains that a determination by this Court that the magistrate court erred by declining to remove Ahmed from DVC would have no practical effect on the outcome of Ahmed's case because Ahmed *was* removed from DVC and was ultimately convicted by a jury after a trial. The record does not support this assertion. While the record is vague in this regard, it provides that Ahmed moved to dismiss the complaint against him on constitutional grounds, while also seeking to be transferred to "regular" magistrate court. Ultimately, though the record is not entirely clear, the magistrate court appears to have left Ahmed in the DVC at that time, even though his ultimate sentence, as will be discussed below, does not appear to be a DVC sentence. Either way, the relief that Ahmed sought before the magistrate court would have had a practical effect on the outcome of his case had the charge against him been dismissed. As such, we will address the merits of Ahmed's argument as it relates to the alleged due process violation.

"It is fundamental to our legal system that the State shall not deprive 'any person of life, liberty, or property, without due process of law.' " *State v. Rogers*, 144 Idaho 738, 740, 170 P.3d 881, 883 (2007) (quoting U.S. CONST. amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *State v. Stegall*, 167 Idaho 918, 921, 477 P.3d 972, 975 (2020) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)); *see also Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 780, 215 P.3d 494, 500 (2009) ("The right to procedural due process is secured by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and by Article 1, Section 13 of the Idaho Constitution."). Due process is a flexible concept that requires "such procedural protections

9

as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In essence, the right of an accused in a criminal trial is the "right to a fair opportunity to defend against the State's accusations." *Stegall*, 167 Idaho at 921, 477 P.3d at 975 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)); *see also Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001) ("A procedural due process inquiry is focused on determining whether the procedure employed is fair.").

Ahmed's main point is that the prosecutor, not the court, assigned Ahmed's case to DVC. According to Ahmed, due process requires a neutral and detached magistrate make that decision because there is a potential for bias when the same person—the prosecutor—serves as both the accuser and adjudicator. In support of his argument, Ahmed relies on *State v. Easley*, 156 Idaho 214, 322 P.3d 296 (2014). It is perplexing why Ahmed relies on *Easley* when that case stemmed from a treatment court placement (mental health court) that occurred *post-judgment*. *See* 156 Idaho at 221, 322 P.3d at 303. In *Easley*, the placement procedure granted the prosecutor the ability to prevent the district court from considering the defendant for mental health court because the process "grant[ed] the prosecutor an absolute veto over the post-judgment court's ability to sentence [the defendant] to mental health court." *Id*. at 220, 322 P.3d at 302 (internal quotations omitted). Easley appealed arguing the "prosecutorial veto violate[d] Idaho's Separation of Powers Doctrine" because the prosecutor, by "making eligibility determinations for the mental health court *post-judgment rather than pre-judgment*" was "exercising judicial functions." *Id*. at 221, 322 P.3d at 303 (emphasis added). This Court agreed with Easley. *Id*. We held the *post-judgment* prosecutorial veto violated separation of powers because "[w]hatever authority prosecutors have as 'judicial officers,' that authority does not extend to determining sentencing when a defendant has been adjudicated guilty of a violation. That is the court's authority. It cannot be contracted away." *Id*. This Court added:

> This determination does not undercut the structure and purpose of Idaho's [treatment] courts, which are "innovative diversion efforts." *State v. Rogers*, 144 Idaho 738, 739 n. 1, 170 P.3d 881, 882 n. 1 (2007). Idaho's [treatment] courts are designed by statute to be collaborative. Idaho Code [section] 19-5602 requires a coordinating committee to develop guidelines for [treatment] courts, which shall include judges, court administrators, prosecutors, public defenders, treatment providers, law enforcement officers, legislators, executive officers from the governor's office, and more. *Diversion in the pre-judgment process remains collaborative*.

10

*Id*. (emphasis added).

Ahmed asserts the due process violation is worse than the violation in *Easley* because: 1) "there is an established standard requiring eligibility determinations to be made via written standards by the courts as a neutral and detached hearing body;" and 2) "no court in Ada County ever makes or reviews the eligibility determination at all." Ahmed maintains these issues are prejudicial because placement in DVC "makes a discernible difference in both process and in outcome." Ahmed argues he must "pay for any treatment, costs, supervision fees, or court costs that are ordered" and "domestic violence evaluation and treatment are presumptively required." Ahmed argues further, "supervised probation is the default provision of any sentence" in DVC. As such, Ahmed maintains that this presumptive sentence results in "restrictions on liberty and property that do not otherwise apply to similar charges in non-[DVC]."

As an initial point, we note that nothing in the record supports Ahmed's claims about the financial impact or other negative impact of placement in DVC upon him. While these arguments may be potentially true when one is engaged in DVC, there is no evidence in the record of Ahmed paying fees or incurring any other negative impact due to the prosecutor's screening his case into DVC. Thus, his claims about a discernable difference in process and outcome for him are unsubstantiated and do not support relief from this Court.

Ahmed's allegations of disparate treatment and prosecutor overreach are likewise without merit. Ahmed received a fair opportunity to defend against the State's accusations and to argue for a sentence he believed would be appropriate after conviction. *See Stegall*, 167 Idaho at 921, 477 P.3d at 975. As noted above, during his case Ahmed moved the magistrate court to dismiss the charge, arguing this same due process claim. The magistrate court denied the motion. Ahmed then sought a permissive appeal. At the motion hearing before the district court, the district court inquired "[i]f you went across the hall to a court that wasn't titled '[DVC],' would there be any additional Constitutional rights you would have there that you would not have in the titled '[DVC]'? [sic]" Ahmed's counsel answered candidly: "[n]ot that I can think of[.]" In explaining the differences between DVC and non-DVC, counsel did state:

> [T]he only thing that may be different going in, I mean, they still get a status conference—or a pretrial conference, they are still [re]presented by counsel. The offers—settlement offers that a person might receive may be different

11

in a domestic violence court situation rather than on the regular misdemeanor calendar given that the prosecutors are specifically looking for indicia of domestic violence, power and control issues, ongoing violence, patterns of violence.

And so the benefit of the domestic violence program is to get people domestic violence treatment that need it, and hopefully the early intervention and some programing will help stave off future problems.

And as a result of that, most settlement offers coming in have more programming attached to them than, say, if it were adjudicated outside of the domestic violence court program.

Now, I can't speak for every case that would ever come in, but generally, if a case comes into domestic violence court, people are looking at two years of supervised probation, a DV eval[uation], perhaps substance abuse eval[uation], mental health evaluation. And also, the obligation of continued review hearings post sentencing rather than simply being monitored on a probation.

Ahmed's permissive appeal was denied. The district court remanded the case to the magistrate division for continued hearings, which culminated in a jury trial and ultimate sentencing.

From the onset of his case, Ahmed was represented by counsel, was entitled to the same rights afforded in any other court – arguably more considering the goal of DVC is swift resolution of cases. Ultimately, a jury of his peers found Ahmed guilty of violating the protection order. Even more, in sentencing, the magistrate court deviated from the DVC's presumptive two-year supervised probation guideline and sentenced Ahmed to one year of supervised probation followed by one year of unsupervised probation. His claim of disparate treatment due to his initial screening into DVC is not supported on these facts. There is no means for Ahmed to attend meetings and pay extra fees if he is on unsupervised probation. These facts establish that not only was Ahmed granted all process to which he was due, but he also appears to have been sentenced as a non-DVC defendant would be. Nothing in the record establishes that he was ordered to pay additional fees or required to pay costs that any other misdemeanant would not need to pay. He was required to get a domestic violence evaluation, as will be discussed below, but that, alone, does not violate his right to due process.

While we are troubled by the lack of written eligibility standards as required by this Court and the legislature, we do not hold the DVC process, which includes the prosecutor determining eligibility for DVC, unconstitutional based on the record before us. There is no

12

evidence that the DVC process then-employed violated Ahmed's right to due process and the district court did not err in affirming the magistrate court's denial of Ahmed's motion to dismiss on these grounds.

       3.  <u>Idaho Code section 39-6312 does not violate separation of powers</u>.

       Ahmed maintains "the statutory scheme provided for separate criminal punishment under [Idaho Code section] 39-6312 violate[s] separation of powers, as it is the court issuing the protection order that is actually defining the particular conduct that constitutes the offense." According to Ahmed, "the legislature . . . failed to identify the actual action itself that would subject a party to criminal punishment," and that "it is the magistrate that actually defines the specific elements and criminal acts for a conviction under this offense. On the fact [sic] of this statute, the magistrate's order, rather than the legislature, provides the specific definition in any case and for any individual of what conduct is criminal." In support, Ahmed relies on *State v. Herren*, 157 Idaho 722, 339 P.3d 1126 (2014).

      Article II, section one of the Idaho Constitution provides for the separation of powers among Idaho's three branches of government. *See Tucker v. State*, 162 Idaho 11, 28, 394 P.3d 54, 71 (2017).

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

IDAHO CONST. art. II, § 1. "[O]f Idaho's three branches of government, only the legislature has the power to make law." *Mead v. Arnell*, 117 Idaho 660, 664, 791 P.2d 410, 414 (1990) (internal quotation omitted). "It is uniformly held that the power to define crime and fix punishment therefor rests with the legislature, and that the legislature has great latitude in the exercise of that power." *Mallory v. State*, 91 Idaho 914, 915, 435 P.2d 254, 255 (1967).

      Idaho Code section 39-6312 is the provision which criminalizes a violation of a protection order. It provides:

> Whenever a protection order is granted and the respondent or person to be restrained had notice of the order, *a violation of the provisions of the order* … shall be a misdemeanor punishable by not to exceed one (1) year in jail and a fine not to exceed five thousand dollars ($5,000), ten dollars ($10.00)

13

of which shall be deposited to the credit of the domestic violence project account . . . .

I.C. § 39-6312(1) (emphasis added). Section 39-6306 allows a court to issue a protection order when a petitioner makes a showing of an immediate and present danger of domestic violence. In such instances, a court may order a myriad of restrictions *explicitly provided by the legislature*. I.C. § 39-6306(1)(a)-(i). Thus, section 39-6312 connects to the provisions of a protection order issued under the authority granted in Idaho Code section 39-6306. Relevant here, the court may order

> [t]he respondent be restrained by from coming within one thousand five hundred (1,500) feet or other appropriate distance of the petitioner, the petitioner's residence, the school or place of employment of the petitioner, or any specified place frequented by the petitioner and by any other designated family member or specifically designated person of the respondent's household[.]

I.C. § 39-6306(1)(i). The legislature unambiguously granted courts authority to issue protection orders restraining a person who presents an immediate and present danger to another from going within 1,500 feet or "other appropriate distance" of the protected person or the protected person's home, school, or place of employment. I.C. § 39-6306(1)(i); *see also State v. Lodge*, 166 Idaho 537, 540, 461 P.3d 819, 822 (2020) ("[T]he grant of discretion to the district court regarding the issuance of no contact orders [which is similar to the issuance of a protection order, *see* I.C. § 18-920] as part of a criminal case is broad."). Leaving the court with the discretion to determine an appropriate distance for protection does not violate the separation of powers. Judges with familiarity with the unique circumstances of each case are better situated to determine an appropriate distance of protection, rather than requiring every case to uniformly restrain a respondent to a 1,500-feet limit; Magistrate judges are authorized to act within their discretion to carve-out the appropriate limitation on distance, given the facts of each case. Here, the magistrate court imposed a restriction of 300-feet, which is substantially less than what the legislature authorized.

Ahmed relies on *Herren* to support his argument that the statute delegates inappropriate authority to judges to define the law. In *Herren,* this Court analyzed Idaho Code section 18-920, the statute governing no-contact orders. 157 Idaho at 725–26, 339 P.3d at 1129–30. Section 18-920(1) provides that a court may issue "an order forbidding

14

*contact* with another person." (Emphasis added). Further, a violation of a no contact order occurs when "[t]he person charged or convicted has had *contact* with the stated person in violation of an order." I.C. § 18-920(2)(c) (emphasis added). In *Herren*, the magistrate court issued a no contact order stating: "[i]t is hereby ordered that [Herren] shall not contact . . . or attempt to contact, harass, follow, communicate with, or knowingly remain within 100 feet of [protected party]." 157 Idaho at 724, 339 P.3d at 1128. Herren was subsequently charged with violating the no contact order under section 18-920 after he knowingly came within one hundred feet of the protected party. *Id*. On appeal, Herren argued he could not be guilty of violating the no contact order under section 18-920 because he did not actually "contact" the protected party, as the term is generally understood. *Id*. at 725, 339 P.3d at 1129. Conversely, the State argued "the language 'contact . . . in violation of an order,' from Idaho Code section 18-920(2)(c) indicates that 'contact' is that conduct forbidden by the order" which includes distance restrictions. *Id*. This Court disagreed with the State's contentions and ultimately reversed Herren's conviction. *Id*. at 726, 339 P.3d at 1130. We explained: "[a]lthough Herren violated the terms of the no-contact order by remaining within 100 feet of [the protected party], this was 'not contact with the stated person in violation of an order' in violation of Idaho Code section 18-920(2)." The essence of the *Herren* decision is that the lower court went too far in defining what "contact" meant. The court's misstep was not in entering the order, but in defining the limits of the crime itself. This Court acknowledged the predicament that could arise if we were to adopt the State's interpretation of section 18-920. *Id*. at n.1, 339 P.3d at 1130 n.1. We invited the legislature to resolve the potential difficulty that arose from the State's interpretation that "a judge issuing a no contact order has the power to *define conduct* by a particular individual which would constitute a crime other than contempt." The legislature may not "delegate the power to promulgate criminal laws to individual judges as courts do not have the power to define crimes." *Id*. at 726 n.1, 339 P.3d at 1130 n.1.

Although this principle remains good law today, it is inapplicable to Idaho Code sections 39-6306 and 6312. The *Herren* footnote focused on the legislature's failure to define criminal conduct and leaving that to the issuing magistrate to accomplish. The issue here is not a definitional shortcoming; it is a question of a court issuing a protection order that falls within the bounds provided by the legislature in Idaho Code section 39-6306(1).

15

Ahmed argues section 39-6312(1)'s language, "violation of the provisions of the order," is akin to section 18-920's far-reaching proviso which broadly allows a court to issue "an order forbidding *contact* with another person." (Emphasis added). Ahmed's focus is misplaced. The language defining the crime of which Ahmed was convicted is found, not in section 39-6312, but in section 39-6306(1). While we noted in the *Herren* footnote that "contact" may be defined differently by different judges, such a defect simply does not exist in section 39-6312(1), which is circumscribed by the benchmarks the legislature established. Ahmed argues that an issuing court "defines the order" and then determines when a violation occurs. But a violation of section 39-6312 occurs as soon as the person subject to the protection order violates one of the nine restrictions the *legislature* has given the courts authority to impose under section 39-6306(1). Thus, we affirm the district court's holding that the magistrate court did not err in denying Ahmed's motion to dismiss on this ground.

**B.      The district court did not err in concluding that the magistrate court's admission of hearsay evidence was harmless.**

At trial, the magistrate court admitted an audio recording of the phone call the school secretary made to police over Ahmed's hearsay objection. The magistrate court admitted the call under the present sense impression exception. *See* I.R.E. 803(1). On intermediate appeal, the district court held the magistrate court abused its discretion by admitting the phone call. Even so, the district court held the error was harmless. The State does not contest that the admission of the phone call was erroneous.

Ahmed challenges the district court's reference to its standard of review, when it stated, "[t]he burden of showing prejudicial error rests on the party asserting such error." Ahmed, relying on *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010), correctly notes, "[a] defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." Ahmed maintains he met his burden of showing the magistrate court erred in admitting the phone call and thus the district court was "required to treat this error as prejudicial unless and until the State could establish, beyond a reasonable doubt, that the error was harmless." Ahmed argues the State failed to prove beyond a reasonable doubt that the error was harmless. We disagree with Ahmed's conclusion based on the record before us.

16

As an initial point, Ahmed is correct about the standard of review for objected-to error, and that the district court erred when it stated that the burden remained with Ahmed to show prejudicial error. Even so, we will apply the proper standard of review and review the record before the magistrate court against that standard. *Ellis v. Ellis*, 167 Idaho 1, 6–7, 467 P.3d 365, 370–71 (2020).

Idaho Criminal Rule 52 provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See also State v. Johnson*, 148 Idaho 664, 669, 227 P.3d 918, 923 (2010). But in reviewing questions of objected-to error, "[t]he inquiry is whether, beyond a reasonable doubt, a rational jury would have convicted [the defendant] even without the admission of the challenged evidence." *Johnson*, 148 Idaho at 669, 227 P.3d at 923. "A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Perry*, 150 Idaho at 222, 245 P.3d at 974. "In other words, the error is harmless if the Court finds that the result would be the same without the error." *State v. Anderson*, 162 Idaho 610, 618, 402 P.3d 1063, 1071 (2017) (quoting *State v. Almaraz*, 154 Idaho 584, 598, 301 P.3d 242, 256 (2013)). This Court recently clarified: "[w]hen the effect of the error is minimal compared to the probative force of the record establishing guilt 'beyond a reasonable doubt' without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless." *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020).

It is undisputed that the magistrate court erred in admitting the phone call under the present sense impression exception to the rule against hearsay. As such, Ahmed maintains he satisfied his burden of showing an error occurred and that the State had to show the error was harmless beyond a reasonable doubt. "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' " *Garcia*, 166 Idaho at 674, 462 P.3d at 1138 (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). Thus, "[t]he probative force of evidence untainted by error against a defendant must be examined and weighed as against the probative force of the error itself." *Id.* at 675, 462 P.3d at 1139.

Here, "when the error of admitting the [phone call] is weighed against everything else the jury considered, as revealed in the record, the [magistrate] court's error was harmless." *Garcia*, 166 Idaho at 675, 462 P.3d at 1139. First, a deputy testified about the existence of the protection order, that Ahmed was served with the protection order, and that the protection order prohibited Ahmed from being within three hundred feet of S.O.'s elementary school. Second, the school secretary who made the phone call testified at trial and was subject to cross-examination. She testified that she called the police after Ahmed tried to visit S.O. at the school. She also testified that she called police because S.O.'s file provided Ahmed was prohibited from contacting S.O. Last, and of significant import, another deputy testified that he was dispatched to Ahmed's house after receiving the phone call and, at that time, Ahmed told the officer he had visited the school. Without admitting the phone call, the probative force of the evidence at trial based on the above testimony is strong enough to show beyond a reasonable doubt that Ahmed visited the elementary school in direct violation of the protection order. Thus, regardless of the district court's misstatement of the appropriate standard of review, we conclude that the magistrate court's error was harmless beyond a reasonable doubt. We therefore affirm the district court's conclusion, though we apply the appropriate standard of review in doing so.

## C. The district court did not err in affirming the magistrate court's jury instructions.

Ahmed objected to the proposed post-proof jury instructions. Ahmed asked the magistrate court to include an intent element to the instruction defining the elements of the charge of violation of a protection order. The magistrate court declined to do so. The district court affirmed. The district court held that the proposed instruction set forth "the mental statement necessary for violation of [section 39-6312]—notice of the order and acting in violation of the order." Ahmed argues the district court erred in affirming the magistrate court's failure to provide an instruction on the applicable intent for the offense because "whether [Ahmed] had meaningful notice of the order in light of his language difficulties was the central—perhaps even [the] only—disputed element in his entire trial."

"A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information." *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430. Stated otherwise, "a trial court must deliver instructions on the rules of law that

18

are 'material to the determination of the defendant's guilt or innocence.' " *Id*. (quoting *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999)). "This necessarily includes instructions on the 'nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted.' " *State v. Meyer*, 161 Idaho 631, 634, 389 P.3d 176, 179 (2017) (quoting *Mack*, 132 Idaho at 483, 974 P.3d at 1112).

> Each party is entitled to request the delivery of specific instructions. However, such instructions will only be given if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not "correct and pertinent" if it is: (1) an erroneous statement of the law; (2) adequately covered by other instructions; or (3) "not supported by the facts of the case." *State v. Olsen*, 103 Idaho 278, 285, 647 P.2d 734, 741 (1982).

*Id*.

This Court "review[s] the trial court's jury instructions *de novo* to determine 'whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law.' " *State v. Dunlap*, 155 Idaho 345, 463, 313 P.3d 1, 20 (2013) (quoting *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012)). The instruction must be considered in the context of the instructions as a whole. *Id*.; *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.").

"In every crime or public offense there must exist a union . . . of act and intent[.]" I.C. § 18-114; *see also* I.C.J.I. 305. "A union of act and intent jury instruction should generally be given for a general-intent crime."[7] *State v. Beeks*, 159 Idaho 223, 231, 358 P.3d 784, 792 (Ct. App. 2015). Even so, the Court of Appeals has recognized "it is unresolved whether such an instruction is necessary in order for the instructions, when viewed as a whole, to fairly and accurately reflect the applicable law." *Id*. Even though the answer to the Court of Appeals' question will generally be yes, for purposes of the limited facts before us, we hold that such an instruction was unnecessary and the instructions, when viewed as a whole, fairly and accurately reflect the applicable law. Beyond that, even "if the failure to give a union of act and intent jury instruction for a general intent crime constituted a

---

[7] "A general intent statute is one that simply prohibits a specific voluntary act while a specific-intent crime requires an intent to cause a particular result or achieve a specific purpose." 22 C.J.S. *Criminal Law: Substantive Principles* § 36 (2021).

19

violation . . . [a defendant must] show a reasonable possibility that the error affected the outcome of the trial." *Beeks*, 159 Idaho at 231, 358 P.3d at 792 (citing *Perry*, 150 Idaho at 226, 245 P.3d at 978).

Here, the instruction at issue provided:

> In order for the defendant to be guilty of Violating a Protection Order, the state must prove each of the following:
> 1. On or about December 12[,] 2017
> 2. in the state of Idaho
> 3. the defendant Moawia Ahmed
> 4. violated the provisions of a protection order issued on October 2, 2017 by Judge Andrew Ellis by attempting to contact S.O. and coming within 300 feet of . . . Elementary School, having received notice that the Protection Order prohibits him from doing so, and
> 5. *before such violation the defendant had notice of the order.*

Ahmed's claim of error relies on his theory that, because of a language barrier, Ahmed did not receive adequate *notice* of the protection order. Thus, Ahmed asserts an intent instruction was necessary because there is a question of whether there was a lack of notice. "[W]hen a criminal statute does not set forth any specific mental state as an element of the crime, the intention with which the criminal act is done . . . is immaterial." *Beeks*, 159 Idaho at 231, 358 P.3d at 792 (citing *State v. Fox*, 124 Idaho 924, 925-26, 866 P.2d 181, 182-83 (1993)). "[T]he general-intent element is satisfied if the defendant knowingly performed the interdicted act . . . regardless of whether the defendant intended to commit a crime." *Id*. Thus, to find Ahmed guilty, "the state needed only to establish that [Ahmed visited the school] in violation of the valid [protection order] and with notice that the [protection order] was in effect." *Beeks*, 159 Idaho at 231, 358 P.3d at 792.

The instruction clearly provided that the State was required to prove, beyond a reasonable doubt, that Ahmed had notice of the protection order. Based on the instruction as given, Ahmed was free to argue that his language barrier precluded him from having notice of the order. The record before the jury included evidence that English was not Ahmed's first language, and thus the jury was free to consider that very issue in coming to its decision. If the State failed in that proof, the jury was free to find that Ahmed was not guilty of violating the protection order. However, the jury did the opposite. Given these facts, the "intention with which the criminal act [was] done . . . is immaterial." *Id.* The issue was whether Ahmed had notice and whether he acted after that notice. That issue was

20

squarely before the jury and was decided against Ahmed. Therefore, we affirm the district court.

**D.    The district court did not err in affirming Ahmed's sentence.**

As part of Ahmed's sentence, the magistrate court ordered Ahmed undergo a domestic violence evaluation. The district court affirmed the sentence. The district court held the magistrate court did not abuse its discretion in ordering Ahmed to undergo a domestic violence evaluation as a condition of his probation because such an evaluation was reasonable and because a trial court may consider uncharged conduct or unproven allegations. Ahmed argues the district court abused its discretion when it affirmed the magistrate court's sentence requiring Ahmed undergo a domestic violence evaluation because it stemmed from conduct for which Ahmed was never convicted.

"Appellate review of a sentence is based on an abuse of discretion standard." *State v. Dobbs*, 166 Idaho 202, 203, 457 P.3d 854, 855 (2020). In reviewing whether a lower court abused its discretion, this Court asks whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Villa-Guzman*, 166 Idaho 382, 384, 458 P.3d 960, 962 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

"[A] fundamental requirement in the proper exercise of sentencing discretion is reasonableness." *Dobbs*, 166 Idaho at 204, 457 P.3d at 856 (quoting *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993)). "A sentence is reasonable if it appears necessary to achieve the objectives of criminal punishment." *Id*. Those objectives are "protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, with the primary objective being the protection of society." *Id*. (quoting *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1228, 1236 (2017)). "A sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court." *State v. Alvarado*, __ Idaho __, __, 481 P.3d 737, 749 (2021) (quoting *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2016)).

Ahmed's sentence is well within the statutory guidelines. Idaho Code section 39-6312(1) provides violation of a protection order is a "misdemeanor punishable by not to exceed one (1) year in jail and a fine not to exceed five thousand dollars ($5,000), ten dollars ($10.00) of which shall be deposited to the credit of the domestic violence project . . . ." More, "it is well established that a sentencing court may, with appropriate caution, consider a defendant's alleged criminal conduct for which he has not been convicted or for which charges have been dismissed." *State v. Thomas*, 133 Idaho 800, 804, 992 P.2d 795, 799 (Ct. App. 1999). Beyond that, the magistrate court noted that the protection order was granted because Ahmed's wife sought to prevent him from seeing her, presumably because of domestic violence in the relationship. At the sentencing hearing, the magistrate court explained:

> And I'm going to order that you complete a domestic violence evaluation. And the reason I'm doing that, there's—is, first, your wife went—had went [sic] and got a civil protection order to prevent you from seeing her. The second reason is there have been past allegations of domestic violence. And I know that none of those have been proven, but there have been past allegations.
>
> And if the evaluator feels that there are no issues as far as domestic violence is concerned, the evaluation is likely—is not likely to recommend any sort of treatment. So I'm not going to order you to get treatment. I'm going to order you to get an evaluation and that will recommend whether or not treatment would be necessary.

The record shows that the magistrate court considered the overriding sentencing goal of protection of society, and it also considered the objective of rehabilitation, and appropriately concluded it was reasonable for Ahmed to undergo a domestic violence evaluation and likely follow any recommendations in the evaluation. While Ahmed argues that this was also part of the due process violation he suffered (as discussed above), the fact that Ahmed was found to have violated a protection ordered issued "[u]pon a showing that there [wa]s an immediate and present danger of domestic violence" between him and his wife, makes this requirement of his sentence not only reasonable, but likely commonplace, whether Ahmed was a part of DVC or not. Thus, we affirm the district court's holding that the magistrate court did not abuse its discretion when it required Ahmed to undergo a domestic violence evaluation as part of his sentence.

**E.** **This Court will not reverse Ahmed's conviction under the cumulative error doctrine.**

On appeal to the district court, Ahmed argued the accumulation of the errors at trial warranted reversal. The district court disagreed and simply stated, "[t]here was no cumulation of errors that denied [Ahmed] a fair trial." Before this Court, Ahmed argues the district court erred and that the cumulative error doctrine requires reversal of his conviction.

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial." *State v. Johnson*, 163 Idaho 412, 428, 414 P.3d 234, 250 (2018) (quoting *Perry*, 150 Idaho at 230, 245 P.3d at 982). Even so, the mere presence of errors does not automatically require reversal of a conviction because a defendant "is entitled to a fair trial, not an error-free trial." *Id*. (quoting *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998)). "[A] necessary predicate to the application of the doctrine is a finding of more than one error." *Perry*, 150 Idaho at 230, 245 P.3d at 982.

Ahmed "has failed to demonstrate at least two errors, [in the trial court, which is] a necessary predicate to the application of our cumulative error doctrine." *Perry*, 150 Idaho 231, 245 P.3d at 983. As a result, we decline to reverse Ahmed's conviction on that basis.

## V. CONCLUSION

The district court's decision is affirmed.

Justices BRODY, MOELLER and Justice *pro tem* BURDICK, CONCUR.

STEGNER, J., specially concurring.

I concur in the majority's conclusion that Ahmed failed to preserve his argument that the DV Court violates separation of powers principles because entry to that Court is controlled by the prosecutor (and despite my belief that this argument has potential merit if it had been properly preserved). I also concur with the majority's conclusion that the record does not establish that Ahmed was actually placed in DV Court. Consequently, it is not clear from this record that he can argue that his rights to due process were violated. However, I write separately to voice my concerns regarding the operation of Idaho's Domestic Violence Courts.

23

The Misdemeanor Domestic Violence Court Participant Handbook outlines the goals and requirements of the program in Ada County.[8] Specifically, the Handbook provides that participants must (1) "pay for treatment costs, court costs, and supervision fees," (2) appear "before a DV Court judge on a regular basis after sentencing," and (3) "pay Misdemeanor Probation Department fees currently set at $75.00 per month." The Handbook also states that "[f]ailure to follow either the probation terms or the DV Court's orders may result in dismissal from the program." Finally, participants "must be motivated to make this change and [be] committed to ending domestic violence."

Idaho conducts multiple treatment courts, including drug and mental health courts, which are voluntary in nature. Defendants must "agree to participate" in these treatment courts, along with meeting other criteria for eligibility. *See Treatment Courts Available in Idaho*, Idaho Supreme Court, https://isc.idaho.gov/solve-court/types. DV Court is not classified as a treatment court: "DVCs are not specialty courts like drug courts or mental health courts. Offenders in those courts volunteer to participate in non-conventional procedures; DV [Court] defendants are simply assigned to DVC as part of the traditional justice system." Dennis Reuter, *A Road to Hell: The Well-Intended Domestic Violence Court*, 59 ADVOCATE 48, 48 (2016).

Although not strictly defined as a treatment court, DV Court employs similar goals as those of drug and mental health courts:

> Domestic violence courts hold offenders accountable, increase victim safety, provide greater judicial monitoring and coordinate information to provide effective interaction and use of resources among the courts, justice system personnel and community agencies. Effective case management and coordination ensure that decisions in one (1) case do not conflict with existing orders in other civil and criminal cases and provide courts with the necessary information to protect victims and families.

I.C. § 32-1408(2); *compare* I.C. § 19-5602 ("The goals of the drug courts and mental health courts created by this chapter are to reduce the overcrowding of jails and prisons, to reduce alcohol and drug abuse and dependency among criminal and juvenile offenders, to hold offenders accountable, to reduce recidivism, and to promote effective interaction and use of

---

[8] Notably, Ada County was selected by the United States Department of Justice "to serve as a role model for DVCs across the nation." Dennis Reuter, *A Road to Hell: The Well-Intended Domestic Violence Court*, 59 ADVOCATE 48, 49 (2016).

resources among the courts, justice system personnel and community agencies."). While a DV Court is not a "treatment court" *per se,* the goals of Idaho's treatment courts are nevertheless analogous to those of DV Court. As a result, I think defendants in DV Court should likewise have the choice to voluntarily opt in or out, as they do in Idaho's treatment courts. *See* Dennis Reuter, *A Road to Hell: The Well-Intended Domestic Violence Court*, 59 ADVOCATE at 52.

I believe that participation in or "transfer" to DV Court should not be compulsory, nor should it be the decision of a prosecutor. In my view, it is solely within the province of the sentencing judge to determine whether an offender should engage in domestic violence programming. Requiring an offender to take part in DV Court against his or her wishes would be futile: First, forcing a defendant to take part in a treatment program before he has acknowledged a willingness to engage in that treatment is senseless, in my experience as a judge who has presided for many years in both drug and mental health courts. Second, an offender participating in programming unwillingly is unlikely to meaningfully participate, which could also jeopardize the successful participation of others in the program.[9] An offender's animus to required programming would likely be obvious to other participants, and could undermine other willing participants' engagement.

Not only are there practical concerns with mandating an offender to participate in DV Court, but the additional burdens of DV Court, including fees, treatment costs, and frequent court appearances (which can easily impair one's employment) place unique constraints on an offender that he or she would not otherwise face if proceeded against in criminal court. In this case, however, I agree with the majority that Ahmed was sentenced "as a non-DVC defendant would [have been]." It is for this reason that I nevertheless specially concur in the majority opinion. Because Ahmed failed to preserve his argument that a prosecutor's control over who participates in DV Court violates separation of powers principles and entitlement to due process, I must leave for another day my objection to the compulsory nature of Idaho's DV Courts.

---

[9] One of the most common forms of programming in DV Court is "group counseling." Dennis Reuter, *A Road to Hell: The Well-Intended Domestic Violence Court*, 59 ADVOCATE at 49. Group counseling, or group therapy, often involves members of the group relying on one another for support in adopting coping strategies for an underlying issue. *See Psychotherapy: Understanding Group Therapy*, AMERICAN PSYCHOLOGICAL ASSOCIATION (Oct. 31, 2019), https://www.apa.org/topics/psychotherapy/group-therapy.