# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52794

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

SHERYL D. ROBERTSON,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, October 2025 Term

Opinion Filed: November 24, 2025

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Custer County. Stevan H. Thompson, District Judge.

The district court's order revoking probation and imposing a modified sentence is <u>vacated</u> and <u>remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Ben P. McGreevy, argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. John C. McKinney, argued.

---

BRODY, Justice.

This criminal appeal arises from the district court's revocation of Appellant Sheryl D. Robertson's probation. Under the Idaho Rules for Treatment Courts ("I.R.T.C."), a termination hearing in treatment court may also serve as the probation-revocation hearing. With the understanding that Robertson waived that dual-purpose hearing, the district court proceeded to disposition on Robertson's probation violation without holding an evidentiary hearing. The question presented is whether, in doing so, the district court violated Robertson's procedural rights guaranteed by the Due Process Clause of the Fourteenth Amendment.

In 2017, Robertson pleaded guilty to a felony possession charge. The district court sentenced Robertson, retained jurisdiction for one year, and ultimately placed Robertson on probation. Robertson later violated probation, but the district court elected to continue the probation with the additional requirements that Robertson perform 100 hours of community

service and complete a treatment court program. Robertson subsequently enrolled in Bonneville County Wood Court, a treatment court that promotes recovery and self-sufficiency. Later, the State moved to terminate Robertson from Wood Court and revoke her probation, alleging Robertson violated Wood Court rules. Robertson waived a termination hearing in Wood Court, and the district court summoned her for a hearing.

At the hearing, the district court proceeded directly to disposition on the State's probation-violation allegation without holding a formal revocation hearing. It reasoned that, under the I.R.T.C., Wood Court was the appropriate forum for Robertson to contest both the termination from Wood Court and the probation-violation allegation. In the district court's view, when Robertson waived her termination hearing in Wood Court, she simultaneously waived her right to a probation-revocation hearing.

On appeal, Robertson contends that the district court violated her Fourteenth Amendment due process rights by proceeding directly to disposition without a probation-revocation hearing. The State counters that the I.R.T.C. afforded Robertson all the process she was due for both termination from Wood Court and probation revocation and further argues that her waiver of those procedural rights in Wood Court was knowing and intelligent. The Court of Appeals agreed, holding that the district court complied with the I.R.T.C. and affirming the revocation of Robertson's probation and execution of her modified sentence. However, it declined to consider whether Robertson received the process required under the Due Process Clause as articulated in *Morrissey v. Brewer*, 408 U.S. 471 (1972).

We granted Robertson's petition for review. In so doing, we emphasize that the Constitution, not procedural rules—whether promulgated by this Court or otherwise—is our rubric for determining whether a criminal defendant has been afforded due process. Because Robertson's waiver of her right to a probation-revocation hearing was not made knowingly and intelligently, as the Constitution requires, we conclude that the district court failed to satisfy due process by proceeding directly to disposition without first holding such a hearing. In short, Robertson is entitled to an opportunity to be heard on the State's probation-violation allegation.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    The District Court Proceedings

In July 2016, a patrol deputy with the Custer County Sheriff's Office arrested Sheryl Robertson for possession of methamphetamine, a felony offense. *See* I.C. § 37-2732(c)(1).

Pursuant to a plea agreement, Robertson pleaded guilty to the possession charge. The district court sentenced Robertson to a unified ten-year sentence, with four years determinate. However, the court retained jurisdiction for 365 days and recommended that Robertson "undergo evaluation and/or treatment by the State Board of Correction."

After completing the term of retained jurisdiction, the district court placed Robertson on probation "subject to all the terms and conditions specified" by the Idaho Department of Correction and the district court. In January 2021, the Department reported to the district court that Robertson had violated three conditions of her probation by: (1) failing to start substance abuse treatment after being instructed to do so in December 2020; (2) using methamphetamine on four occasions; (3) violating state law by leaving the scene of a motor vehicle accident and, on a separate occasion, driving under the influence. The Department's report noted that Robertson "lost her main support system (her boyfriend of 14 years) in October 2020[,]" and even though Robertson "still had her family, . . . she made little effort to get help for her substance abuse problem."

Robertson admitted the three probation violations alleged by the State. In October 2021, the district court issued an "Order on Probation Violation" finding that Robertson "materially violated the terms and conditions of probation." The court ordered Robertson to "continue on probation[,]" complete 100 hours of community service, and successfully complete a treatment court:

> Defendant shall successfully complete Butte County Problem Solving Court. Probation officer may choose to have defendant apply for Bonneville County Problem Solving Court if space becomes available. The defendant shall remain in custody of the Bonneville County Sheriff's Office until she is signed up with probation or until Butte County [Problem Solving Court] Judge order release.

Robertson was subsequently accepted into the Bonneville County Wood Court effective October 2022.

In March 2023, Robertson brought a pro se motion asking the district court to "remand [her] felony probation back to Butte County" so she could be closer to her home and family in Mackay. Robertson complained of what she perceived as unprofessional conduct by the Wood Court staff, the program's proximity to an abusive former boyfriend, its distance from her sick son, and the expense of maintaining a second residence in Idaho Falls. She also sought a "stay on any sanctions, punishments or retribution by Wood Pilot staff towards [her] for speaking [her] concerns on this matter." In her motion, Robertson stressed that she was amenable to remaining in a

3

treatment court and wanted to "stay in good standing with the court while [she went through] the process of trying to remand court ordered supervision to Butte County, from [Bonneville] County."

In May 2023, shortly after making these motions, the State moved to terminate Robertson from the program, on the recommendation of the Wood Court staff, and to revoke Robertson's probation for a second time. As grounds for termination, the State alleged that Robertson (1) engaged in "[u]napproved [a]ssociations[;]" (2) deleted text messages, call history, and internet search history from her cellular phone without permission; and (3) "was ordered to complete the program on 10/26/2022" but "is unable to complete due to continued violation of associations and terminated as a result."

An "Evidentiary Termination Hearing" was set for May 22, 2023, before Treatment Court Judge Dane H. Watkins in Bonneville County. However, Robertson executed a "Waiver of Rights Regarding Termination from Treatment Court" ("Waiver"), which purported to waive her right to a formal hearing to contest termination from Wood Court:

> I hereby waive my right to be advised of the grounds alleged by the State in support of the State's proposal to terminate me from continued participation in Treatment Court and to require the State to disclose the evidence against me for my proposed termination from Treatment Court. I further waive my right to a Termination Hearing and request and consent to proceed directly to a Sentencing Hearing.

Robertson was also given a "Notification of Rights (Termination from Treatment Court)" ("Notification") document, which similarly explained: "You may waive your right to a Termination Hearing, and you may consent to proceed directly to Sentencing or Disposition." Two days after Robertson executed the Waiver and was terminated from Wood Court, the district court (in Custer County) issued an order directing the Custer County Sheriff to transport Robertson to the Custer County Courthouse on May 15, 2023, so she could attend "a hearing."

At the May 15 hearing, the district court equivocally stated that the purpose of the hearing was to proceed "to a disposition after [Robertson] was terminated from the Wood court program." After stipulating to the mootness of Robertson's prior pro se motions, defense counsel stated, "I'm not sure where we go from here. Is the State going . . . to file a probation violation[?]" The district court echoed this confusion and referenced the I.R.T.C. provisions concerning probation violations:

> [T]here is a little bit of confusion under the new drug-court rules of who's going to do the disposition, if Judge Watkins should have done it there or if there needs to be a probation violation now filed here, before this [c]ourt, to kind of activate the

4

process and -- and go through the normal probation-violation proceeding with the allegation being that she failed the drug court program.

Initially, the district court expressed some concern that there was not a "clear" probation violation that would support proceeding to disposition. But after a colloquy with the prosecuting attorney about the procedural history of Robertson's case, the district court concluded "we actually have an older [probation violation], I think, that's sitting there that maybe needs to be supplemented with the fact that she's now failed drug court, I suppose." Cognizant of that prior probation violation, the district court reasoned it could proceed to a disposition without the need for the State to bring a fresh probation violation relating to Robertson's conduct in the Wood Court program:

> Based upon what's in this court file now, I can basically take judicial notice of the fact that [Robertson] . . . failed that.

> She had an opportunity to have -- have, basically, a probation-violation hearing before . . . Judge Watkins -- that's the process there -- where she was afforded an opportunity for counsel and advised of her rights.

> And she waived that hearing and basically agreed to be discharged from -- from the Wood court. And so I think I can just take judicial notice of that -- that fact.

> And that would be a violation of this [c]ourt's order of probation that I -- that I entered on October 21st of 2021 without really any evidence being presented because it's all here in the file. And I can take judicial notice of that.

> So I really think we are at a -- at a disposition stage here . . . .

Defense counsel moved the court to defer disposition to "another day and allow [Robertson] to apply to [other] problem-solving courts." Counsel explained that what Robertson "really wants to do is not do Wood [C]ourt but do regular drug court in Butte County." The district court rejected Robertson's request because it did not see the value in providing Robertson more time to apply to other programs when "she was just discharged from the Wood [C]ourt program." Ultimately, the district court concluded that, based on Robertson's two riders and discharge from Wood Court, probation was no longer appropriate. The court imposed a seven-year sentence, with three years fixed and four years indeterminate. This appeal followed.

B.      **Opinion of the Court of Appeals**

Before the Court of Appeals, Robertson argued that the district court violated her procedural rights when it proceeded to disposition at the May 15 hearing. Robertson asserted that she "did not have written notice of the alleged probation violation, an opportunity to be heard on

5

the alleged violation, and the right to confront and cross-examine adverse witnesses" before the district court revoked her probation. *State v. Robertson*, No. 50854, 2024 WL 4576350, at *2 (Idaho Ct. App. Oct. 25, 2024). In her view, these deficiencies violated the Fourteenth Amendment's Due Process Clause under *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Finally, although Robertson conceded that the error was unpreserved, she maintained that it constituted fundamental error and was therefore amenable to appellate review. *See Robertson*, 2024 WL 4576350, at *2.

Conversely, the State insisted that Robertson had been "afforded due process because she received notice of the grounds for seeking termination from drug court, waived her right to a termination hearing, and requested and consented to proceed directly to a Sentencing Hearing." *Id.* (citation modified). According to the State, compliance with the termination procedures laid out in the I.R.T.C. gave Robertson all the process she was due, including with respect to the revocation of her probation. *Id.*

The Court of Appeals affirmed. *Id.* at *6. It held that the I.R.T.C. "provide[] the same procedural due process protections afforded to probationers facing a probation violation allegation." *Id.* at *3. Those protections include: notice of the proposed termination from treatment court; notification of rights prior to a termination hearing; placement of the burden of proof on the State by a preponderance of the evidence; the right to confront and cross-examine witnesses, to present witnesses and other evidence, and to subpoena witnesses at no cost; application of the Idaho Rules of Evidence to the same extent they apply in probation-violation hearings; the ability to waive a termination hearing; and a determination that any violation is willful. *Id.* The Court of Appeals agreed that, since the treatment court followed the rules, Robertson was not deprived of constitutionally mandated process when the district court proceeded to disposition on the probation violation. *Id.* at *5.

Moreover, the Court of Appeals held that, under I.R.T.C. 18(b), Robertson's waiver of a Wood Court termination hearing permitted the district court to proceed directly to disposition on the alleged probation violation without an additional hearing. *Id.* at *4. It further concluded that Robertson had adequate notice that the termination proceeding encompassed the probation violation as well, based on the disclosures in the Notification and Waiver forms she signed. *Id.* at *4–5. The Court of Appeals limited its review to whether the treatment court and the district court complied with the I.R.T.C. It declined to consider Robertson's constitutional challenge to the rules

6

"[b]ecause only the Idaho Supreme Court has the authority to create the rules, [and] only the [Idaho] Supreme Court can amend or abrogate those rules." *Id.* at \*5. Robertson petitioned this Court for review, arguing that the Court of Appeals erroneously failed to address her constitutional due process argument. This Court granted Robertson's petition for review.

## II.    STANDARDS OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals . . . ." *State v. Barrett*, 163 Idaho 449, 451, 414 P.3d 1188, 1190 (2018) (citation omitted). Nevertheless, "[t]his Court . . . acts as if the case were on direct appeal from the district court." *Id.* (quoting *State v. James*, 148 Idaho 574, 576, 225 P.3d 1169, 1171 (2010)).

Where, as here, a defendant claims that their due process rights were violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Anderson*, 144 Idaho 743, 746, 170 P.3d 886, 889 (2007) (citations omitted). However, we freely review the application of constitutional principles to those facts found." *Id.* Furthermore, the validity of a waiver of due process rights—whether it was knowing, intelligent, and voluntary—presents a mixed question of law and fact. *See United States v. Shamsid-Deen*, 61 F.4th 935, 945 (11th Cir. 2023). In reviewing a mixed question of law and fact, "the district court's findings of fact will be upheld where they are supported by substantial and competent evidence in the record . . . ." *Herrera v. Estay*, 146 Idaho 674, 678–79, 201 P.3d 647, 651–52 (2009). But "this Court will freely review the district court's application of law to its findings of facts." *Id.*

## III.    ANALYSIS

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The Framers of the Fourteenth Amendment borrowed from English law the concept of "due process of law," which was "designed to secure the subject against the arbitrary action of the crown, and to place him under the protection of the law." *Mo. Pac. Ry. Co. v. Humes*, 115 U.S. 512, 519 (1885). Those protections are little changed in our system; the mandate of the Due Process Clause is broadly applicable to state action that affects liberty and property interests, especially where the state action could result in "grievous loss." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). A state's revocation of probation or parole is just such a state action.

7

In *Morrissey v. Brewer*, the United States Supreme Court considered "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." 408 U.S. 471, 472 (1972). The Supreme Court answered that question in the affirmative. In reaching its holding, the Supreme Court acknowledged the liberty interest enjoyed by a parolee is an "indeterminate" one. *Id.* at 482. Nevertheless, that indeterminate liberty interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* Accordingly, the termination of a parolee's liberty interest requires "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484.

*Morrissey* outlines "two important stages in the typical process of parole revocation." *Id.* at 485. First, the parolee is entitled to "some minimal inquiry . . . at or reasonably near the place of the alleged parole violation . . . as promptly as convenient . . . while information is fresh and sources are available." *Id.* This initial inquiry is akin to a "'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254, 267–71 (1970)). The parolee must be given notice of the hearing and "that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." *Id.* at 486–87.

Second, *Morrissey* requires that a "revocation hearing" precede any actual termination of parole. *Id.* at 487–88. The revocation hearing "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488. The parolee must have an opportunity to be heard and present evidence to rebut the alleged violation or demonstrate "circumstances in mitigation . . . that the violation does not warrant revocation." *Id.* The revocation hearing should occur "within a reasonable time after the parolee is taken into custody." *Id.*

*Morrissey*'s framework provides only the minimum requirements to adjudicate parole violations; states retain a great deal of flexibility in filling the gaps. *Id.* at 488. At a minimum, however, the state must provide:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine

adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. Later, in *Gagnon v. Scarpelli*, the United States Supreme Court held that these same constitutional baselines apply to the revocation of probation as well. 411 U.S. 778, 782 (1973); *see also State v. Kelsey*, 115 Idaho 311, 314, 766 P.2d 781, 784 (1988) ("Our statutes and cases require that a probationer be given a due process hearing before his probation can be revoked.").

In *State v. Rogers*, this Court considered whether "a defendant who pleads guilty in return for admission into a diversionary program [is] entitled to due process of law when the State seeks to terminate him from that program, and if so, what process is due?" 144 Idaho 738, 740, 170 P.3d 881, 883 (2007). We held that termination from a diversionary program, such as a drug court, implicates a constitutionally protected liberty interest. *Id.* at 741–42, 170 P.3d at 884–85. We then adopted the procedural framework announced in *Morrissey* and *Gagnon* to adjudicate termination in a manner respecting that interest. *Id.* at 742–43, 170 P.3d at 885–86. In other words, a drug court participant facing termination is entitled to the same process afforded a probationer in probation-revocation proceedings. *Id.*

Of course, like any constitutional right, a treatment court participant or probationer may waive *Morrissey*'s bundle of pretermination procedural rights. But to be effective, the waiver must be knowing, intelligent, and voluntary. *Steele v. State*, 153 Idaho 783, 786, 291 P.3d 466, 469 (2012). Here, the record does not show that Robertson understood her waiver of the termination hearing in Wood Court also waived her right to a probation-revocation hearing. We therefore hold that her waiver was ineffective with respect to the latter. The district court was obliged to hold a probation-revocation hearing, and its failure to do so violated Robertson's unwaived constitutional right. In reaching this conclusion, we note that our review of the validity of Robertson's waiver is not constrained by the fundamental error doctrine.

A.      **The district court violated Robertson's due process rights when it proceeded to disposition without holding a probation-revocation hearing.**

Robertson contends her waiver was ineffective to waive her constitutional right to due process before revocation of her probation "because the notification of rights and waiver relied upon by the State primarily framed Ms. Robertson's due process rights in terms of Wood Court, not probation." The State disagrees, maintaining that Robertson understood the waiver extended

to a probation-revocation hearing because she initialed the provision on the Waiver of Rights Form ("Waiver") indicating that she "request[ed] and consent[ed] to proceed directly to a Sentencing Hearing." We are unpersuaded. The Waiver and the Notification of Rights Form ("Notification") do not clearly communicate that waiving a termination hearing in Wood Court also forfeits a probation-revocation hearing in the sentencing court. On this record, the State has not met its burden to establish that Robertson's waiver of a probation-revocation hearing was knowing, intelligent, and voluntary.

It is hornbook law that any waiver of a constitutional right is ineffective unless made "voluntarily, knowingly, and intelligently." *Steele v. State*, 153 Idaho 783, 786, 291 P.3d 466, 469 (2012); *Smith v. State*, 146 Idaho 822, 834 n.11, 203 P.3d 1221, 1233 n.11 (2009). That means the probationer or participant must have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *cf. State v. Goullette*, 173 Idaho 869, 876, 550 P.3d 277, 284 (2024) (holding court should consider, *inter alia*, whether defendant understood charges and consequences of pleading guilty in evaluating validity of guilty plea). In other contexts, this Court has adopted a general presumption against waiver of constitutional rights, and the State's burden to overcome that presumption is a "heavy" one. *State v. Bainbridge*, 108 Idaho 273, 276, 698 P.2d 335, 338 (1985) (Fifth Amendment right to counsel).

Starting with the substance of the Notification, the document's title—"Notification of Rights (Termination from Treatment Court)"—did not apprise Robertson that the form also implicated her rights concerning revocation of her probation. Similarly, while its introductory sentence alerted Robertson that "[i]t has been proposed that you be terminated from continued participation in a Treatment Court[,]" it says nothing about probation revocation. In fact, not once does the Notification use the word "probation." The closest it comes to alerting Robertson that the treatment court termination proceedings *could* simultaneously serve to adjudicate probation revocation is in paragraphs eight and twelve.

> 8. If you admit the allegations, or if the Court finds that the State has proven that you willfully violated one or more terms of your condition of participation in Treatment Court, the case will proceed to Sentencing or Disposition. The potential penalty could include the imposition of any previously suspended sentence or the renewed prosecution of any case previously agreed to be suspended. Any recommendation of the parties is not binding on the [c]ourt but may be considered by the [c]ourt in rendering its decision.

10

. . . .

12. You may waive your right to notification of the grounds upon which termination is proposed. You may waive your right to a Termination Hearing, and you may consent to proceed directly to Sentencing or Disposition. If you elect to waive any such rights, you may do so on the record or you may request the applicable waiver form from the [c]ourt.

As Robertson points out in her reply brief, nowhere did the Notification advise her that (1) if she "admitted to the Wood Court termination allegations, the State would also have no need to prove the alleged probation violation[;]" (2) "the termination hearing would function as an admit/deny hearing or an evidentiary hearing for purposes of a probation violation[;]" and (3) "by admitting to the alleged grounds for termination, . . . Robertson would also be admitting to violating probation." In sum, the Notification did not inform Robertson of the consequences of waiving the Wood Court termination hearing, nor did it convey to her that the right to be heard on the revocation of her probation was implicated in that same hearing. Accordingly, Robertson did not knowingly and intelligently waive her right to a probation-revocation hearing when she signed the form.

The Waiver itself offered no clearer guidance to Robertson regarding the nature of the due process rights at stake or the consequences of waiving them. Like the Notification, the Waiver's title refers only to the Wood Court termination hearing—"Waiver of Rights Regarding Termination from Treatment Court." Like the notice, it never uses the word "probation." And, like the notice, the closest the Waiver comes to speaking to Robertson's circumstances is in two of ten provisions.

9. I hereby waive my right to be advised of the grounds alleged by the State in support of the State's proposal to terminate me from continued participation in Treatment Court and to require the State to disclose the evidence against me for my proposed termination from Treatment Court. I further waive my right to a Termination Hearing and request and consent to proceed directly to a Sentencing Hearing.

10. I acknowledge that I have been advised of the grounds alleged by the State in support of the State's proposal to terminate me from continued participation in Treatment Court and that the State has disclosed to me to my satisfaction any evidence that may be presented against me for my proposed termination from Treatment Court. Based on the circumstances presented, I hereby waive my right to a Termination Hearing and consent to proceed directly to a Sentencing Hearing.

These particular advisements, however, are of little consequence to a reader in Robertson's shoes. Whereas the Notification spoke to the possibility of proceeding directly to sentencing *or*

11

disposition upon waiver of a termination hearing, the Waiver only speaks to a subsequent sentencing proceeding. Since the district court had already sentenced Robertson, this language did not convey to Robertson that she was also waiving her right to a probation-revocation hearing. Thus, the Waiver itself provides no basis to conclude that Robertson knowingly and intelligently waived her probation-revocation hearing rights when she signed it.

Two additional observations are worth making about the circumstances of Robertson's purported waiver. First, the record does not show that Robertson had the opportunity to consult with an attorney regarding the content of the Notification and Waiver documents. Indeed, the field on the Waiver document that calls for an attorney's signature was left blank. We do not mean to suggest that Robertson *had* to have the opportunity to consult an attorney in order to validly waive her rights, only that Robertson was unlikely to have understood what she was signing given the opaque language in both the Notification and Waiver.

Second, at the May 15 hearing before the district court, Robertson appeared eager to contest the State's allegations that she had violated the terms of her probation. Her attorney repeatedly mentioned to the court that Robertson *wanted* to complete a treatment court program, just not the Bonneville County Wood Court, which was far from her home and where she appeared to have personal conflicts with staff. Moreover, Robertson contended at the hearing that Wood Court staff retaliated against her after she made various pro se motions to the district court in March 2023, seeking to transfer to a different treatment court and "stay . . . any sanctions, punishments or retribution by Wood Pilot staff towards [her] for speaking [her] concerns on this matter." Robertson emphatically maintained at the May 15 district court hearing that she "had not done anything wrong" and that she had "not violated [her] probation." Without evaluating the merits of these contentions, they nevertheless support the conclusion that Robertson would not have waived her termination hearing in Wood Court had she understood that doing so would also foreclose a hearing on the revocation of her probation.

The State bears a heavy burden to overcome the presumption against waiver of constitutional rights. *See Bainbridge*, 108 Idaho at 276, 698 P.2d at 338. Although Robertson signed the Notification and Waiver, the substantive infirmities of those documents undercut whatever advisement of rights they purported to provide. Specifically, neither document clearly communicates that Robertson's waiver would extend to her procedural rights regarding probation revocation. As such, we conclude that the State has not carried its burden of demonstrating that

Robertson made a knowing and intelligent waiver of the pre-revocation procedural rights to which she was entitled under the Fourteenth Amendment's Due Process Clause. To be clear, our holding does not conclude that the procedures outlined in I.R.T.C. 18 suffer from any constitutional infirmities. Rather, our holding is limited to the sufficiency of the Notification and Waiver forms that were utilized in this case and the lack of any proof that Robertson's waiver was knowing, voluntary, and intelligent.

**B.     The fundamental error doctrine is inapplicable because our review concerns only the validity of Robertson's waiver, which is not a trial error.**

Robertson maintains that "she did not need to make a specific contemporaneous objection to the district court's violation of her due process rights to preserve the issue for appellate review." Alternatively, she asserts that the district court committed fundamental error that is reviewable on appeal. The State also characterizes Robertson's argument as one of fundamental error—asserting that the district court erred by proceeding to disposition without holding a probation-revocation hearing. Both parties misapprehend the object of our review. The question before us is whether Robertson validly waived the probation-revocation hearing required by *Morrissey* and *Gagnon* when she appeared before the Wood Court. As we explain, there is no requirement that challenges to the validity of a waiver be made with the trial court to be preserved for appellate review.

As a general rule, Idaho's appellate courts will not consider unpreserved claims of error for the first time on appeal. *State v. Beeks*, 159 Idaho 223, 227, 358 P.3d 784, 788 (Ct. App. 2015). "This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010) (alteration in original) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)). The contemporaneous-objection rule is as much a trial doctrine as one of appellate review; it discourages "'sandbagging' on the part of defense lawyers" and encourages trial courts to be "stringent in their enforcement" of the rules of criminal procedure. *Wainwright v. Sykes*, 433 U.S. 72, 89 (1977).

The fundamental error doctrine provides an exception to this rule when an unpreserved claim of error affects the defendant's "unwaived constitutional rights." *Perry*, 150 Idaho at 226, 245 P.3d at 978. As an exception to the contemporaneous-objection rule, the fundamental-error doctrine shares that rule's hybrid character as both a principle of trial practice and appellate procedure. *Id.* ("Placing the burden of demonstrating harm on the defendant will encourage the

13

making of timely objections that could result in the error being prevented or the harm being alleviated.").

This pedigree makes clear that neither the contemporaneous-objection rule nor its fundamental-error exception governs this Court's review of a defendant's waiver of the right to a probation-revocation hearing. The object of our review in a waiver case, such as this one, bears little resemblance to a trial, where the policies of preventing "sandbagging" and promoting vigilance among trial judges have particular force. In this context, a contemporaneous-objection requirement would serve no purpose. We therefore review the validity of Robertson's waiver—a mixed question of law and fact—regardless of whether the issue was raised for the first time on appeal.

We have already determined that the State failed to overcome the presumption that Robertson's waiver of her right to a probation-revocation hearing was invalid. The only evidence supporting Robertson's waiver—the Notification and Waiver forms—is woefully deficient in explaining the nature of the rights being abandoned and the consequences of doing so. Put differently, Robertson's waiver was not made knowingly and intelligently and is therefore invalid. Because the district court lacked a valid procedural foundation to revoke Robertson's probation, the resulting disposition judgment cannot stand. Accordingly, we vacate the district court's amended disposition judgment and remand for a probation-revocation hearing. *See United States v. Correa-Torres*, 326 F.3d 18, 25 (1st Cir. 2003) (first citing *United States. v. LeBlanc*, 175 F.3d 511, 518 (7th Cir. 1999); and then citing *United States v. Dodson*, 25 F.3d 385, 390 (6th Cir. 1994)) (holding vacatur of sentence appropriate where defendant's waiver of probation-revocation hearing was found to be invalid).

## IV. CONCLUSION

Based on the foregoing reasoning and authorities, we vacate the district court's order revoking probation and executing a modified sentence and remand for the district court to hold a probation-revocation hearing.

Chief Justice BEVAN, and Justices MOELLER, ZAHN, and MEYER CONCUR.